# THE STATE OF MARYLAND *vs.* THE NORTHERN CENTRAL RAILWAY COMPANY.

*Constitutional Law—Taxation—Alteration of Charter—Contract between State and Corporation Providing for a Limited Exemption From Taxation—Repeal by Implication—Taxation of Northern Central Railway Co.*

A grant by one Legislature to a corporation of a limited exemption from taxation, or a law providing that it shall not be taxed except at a certain rate, is subject to repeal by a subsequent Legislature although the corporation gives a valuable consideration for the grant, since the Constitution, Art 3, sec. 48, provides that all charters may be altered or repealed, and the corporation in accepting the grant must be presumed to know that the immunity from taxation is liable to repeal by future Legislatures.

The Northern Central Railway Company was created under the Act of 1854, ch. 250, by the consolidation of certain railway companies. One of these companies, situated in this State, possessed by its charter a valid exemption from taxation.   The Act of 1872, ch. 234, imposed a tax of one-half of one per centum upon the gross receipts of all railroads.   The Northern Central Railway resisted payment of this tax, claiming exemption under the charter of one of the consolidated railways.   It was held by this Court in 1875 that under the provision of the Constitution of 1851, in force when the Act of 1854 was passed, no charter was beyond the power of the Legislature to repeal or alter; that the Northern Central Railway's exemption from taxation was conferred by the Act of 1854 and not by the original charter of one of the consolidated railways, and that the company was liable to the tax imposed by the Act of 1872.   The case was remanded for a new trial but before final settlement the Act of 1880, ch. 16, was passed, entitled an Act to adjust and settle finally by agreement all pending controversies between the State and the

Northern Central Railway Company, being an Act supplemental to the Act of 1854, ch. 250. The preamble recited, among other things, that the company had the right to have the question at issue between it and the State carried to the Supreme Court of the United States to be there decided ; that there being doubt as to the ultimate decision of said question it was deemed just and proper that an equitable settlement should be made of the matters in controversy. And it was enacted that the Northern Central Railway Company within the State shall be subject to taxation for State purposes to the extent of an annual tax of one-half of one per centum upon gross receipts from its railroad and other sources within the State, and shall not be subject to any other tax under the laws of the State. Subsequently the Act of 1890, ch. 559, raised the tax upon the gross receipts upon all railroad companies within the State to one per centum per annum. In an action to recover the amount of the increased tax, *Held*,

1st. That the Act of 1880, and its acceptance by the Northern Central Railway Company did not constitute a contract between it and the State which was beyond the power of a subsequent Legislature to repeal, because the above-mentioned constitutional provision operated to prevent the Legislature of 1880 from making an irrepealable grant of exemption from taxation.

2nd. That the circumstances that the Act of 1880 professed to have been made for the purpose of settling by agreement the controversy between the State and the company, and that the company accepted it and gave up its right of appeal to the Supreme Court of the United States, do not make the settlement binding upon the State so as to be beyond the power of a subsequent Legislature to repeal, because the constitutional provision in question denies to one Legislature the power to make any grant of immunity from taxation whether there be a consideration for such grant or not.

3rd. That the Act of 1890, which imposed a tax of one per centum on the gross receipts of all railroad companies, whose roads are worked by steam, incorporated by or under the authority of this State and doing business in this State and which repealed all Acts in conflict therewith, operates as a repeal by implication of the Act of 1880 imposing a lesser tax upon the Northern Central Railway Company.

Appeal from a judgment of the Superior Court of Baltimore City (DENNIS, J.) The Act of 1880, ch. 16, is as follows : " An Act to adjust and settle finally, by agreement, all pending controversies between the State of Maryland and the Northern Central Railway Company, by subjecting the franchises and property of said company within this State to taxation for State purposes to a certain extent

and by providing for the payment of a certain indebtedness claimed by the State of Maryland to exist on the part of said Northern Central Railway Company to said State of Maryland, being an Act supplementary to the Act of eighteen hundred and fifty-four, chapter two hundred and fifty, entitled an Act to authorize the consolidation of the Baltimore and Susquehanna Railroad Company with the York and Maryland Line Railroad Company, the York and Cumberland Rail Company, and the Susquehanna Railroad Company by the name of the Northern Central Railway Company.

" Whereas, a controversy has arisen and exists between the State of Maryland and the Northern Central Railway Company in reference to the rights of the State of Maryland to subject to taxation the franchises and property of the Northern Central Railway Company, the said company claiming exemption of the same from taxation upon the grounds that among the terms and conditions of the union and consolidation of the several companies by which said Northern Central Railway Company was formed is one ; that the latter should have all the rights, privileges and immunities of each of said companies, which said terms were entered into under the authority given by the Act of Maryland of eighteen hundred and fifty-four, chapter two hundred and fifty, which, moreover, declared that said Northern Central Railway Company should have all the powers and privileges expressed in the charter granted by the State of Maryland to the Baltimore and Susquehanna Railroad Company, among which privileges was immunity from taxation.

" And whereas, the State of Maryland having, by the Act of eighteen hundred and seventy-two, chapter two hundred and thirty-four, and the Act of eighteen hundred and seventy-four, chapter four hundred and eight, imposed an annual tax of one-half of one per centum on the gross receipts of all railroad companies worked by steam, incorporated by or under the authority of said State of Maryland, and claiming that under said Acts the gross receipts of

said Northern Central Railway Company are liable to said tax, have instituted suits to recover the same.

" And whereas, the property of said company has been also assessed as liable to taxation for county and municipal purposes.

" And whereas, the said company has the right to have the question at issue between it and the State of Maryland carried to the Supreme Court of the United States to be there decided.

" And whereas, it has been represented to this General Assembly that what would be the ultimate decision of said question is a matter of great doubt, and it is deemed to be moreover just and proper that an equitable settlement should be made of the matters so in controversy and it having been represented to this General Assembly that the said Northern Central Railway Company, for the purpose of making such settlement, is willing to pay a tax of one-half of one per centum on the gross receipts within this State, upon the terms and conditions hereinafter set forth ; now, therefore—

" SECTION 1. *Be it enacted by the General Assembly of Maryland*, That the Northern Central Railway Company shall have and possess all the powers, rights, privileges and immunities, and be subject to all the duties and obligations which are expressed in the Act of Assembly of Maryland of eighteen hundred and twenty-seven, chapter seventy-two, entitled an Act to incorporate the Baltimore and Susquehanna Railroad Company, but all the franchises and property of every description and gross receipts of said Northern Central Railway Company, within the State of Maryland, shall be subject to taxation for State purposes to the extent of an annual tax of one-half of one per centum upon the gross receipts from its railroad and branches lying within the State of Maryland, and from all other sources within this State, and said franchises, property and gross receipts shall not be subject to any other tax under the laws of the State of Maryland ; provided, however,

that all such property, works and structures of the said
Northern Central Railway Company, which are or may be
taxable within the meaning of the decision of the Court of
Appeals of Maryland rendered in the year eighteen hun-
dred and seventy-eight in the case of the State of Mary-
land against the Baltimore and Ohio Railroad Company,
shall be subject to taxation for county and municipal pur-
poses in the same way and to the same extent as the prop-
erty of individuals.

"Sec. 2. That this Act shall not take effect until the said
the Northern Central Railway Company shall have paid to
the Treasurer of the State of Maryland the sum of twenty-
nine thousand seven hundred and sixty-two dollars and
fifty-six cents, as mentioned in the third section of this Act,
nor until this Act and all its provisions shall have been ac-
cepted in the mode prescribed in the fourth section hereof.

"Sec. 3. That the payment of the sum of twenty-nine
thousand seven hundred and sixty-two dollars and fifty-six
cents, mentioned in the second section of this Act, shall be
made by said Northern Central Railway Company to the
Treasurer of the State of Maryland, on or before the first
day of July, eighteen hundred and eighty, and the said
treasurer shall receive said sum from said company ; and
the said sum of twenty-nine thousand, seven hundred and
sixty-two dollars and fifty-six cents, when so paid, is hereby
declared to be in full satisfaction and discharge of all claims
arising under the Laws of the State of Maryland for taxes
against said company up to December thirty-first, eighteen
hundred and seventy-nine, saving and excepting taxes for
municipal and county purposes upon the property mentioned
in the proviso to the first section of this Act.

"Sec. 4. That the acceptance of this Act mentioned in
the second section thereof shall be made by the stock-
holders of said Northern Central Railway Company at a
general meeting of the same, the acceptance to be evidenced
by an instrument of writing under the corporate seal of said
company, which shall be filed in the office of the Secretary
of State of Maryland.

"SEC. 5. That upon the compliance of said Northern Central Railway Company with the provisions of the third and fourth sections of this Act, all claims against said Northern Central Railway Company for taxes assessed under any law of the State of Maryland and unpaid by it up to December thirty-first, eighteen hundred and seventy-nine, except municipal and county taxes upon the property mentioned in the proviso to the first section of this Act, are hereby declared to be discharged, and all suits or other proceedings heretofore instituted for the enforcement of the payment by said Northern Central Railway Company of taxes shall be dismissed and abandoned on the payment of costs by said company.

"SEC. 6. That this Act shall take effect from the date of its passage, subject nevertheless to all the conditions and limitations in reference to the provisions of said Act which are therein set forth."

Approved February 25, 1880.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*George R. Gaither, Jr., Attorney-General,* for the appellant.

It is plain, from the authorities, that even if the Act of 1880 was not clearly an Act amendatory to the original charter, it is the duty of our Courts to construe any reasonable doubt regarding the intention of the Legislature in such a manner as to prevent the Act of the Legislature from being construed as an irrepealable contract, and that therefore it should be considered, as it really is, as an amendment to the charter. Being an amendment to the original charter, it is established by conclusive authority that, the original charter being subject to amendment, having been passed since the Constitution of 1851, any amendment to the charter is equally liable to alteration or repeal. This Act was passed after the Constitutions of 1851 and 1867 had expressly provided that no charter should be created

by the State of Maryland after that time which should not be subject to alterations or repeal by the State.   These provisions of the Constitution were inserted for the purpose of preventing any corporations from in the future acquiring any irrepealable rights from the State, and it has been recognized by the Courts that the purpose of these constitutional provisions was to prevent the acquisition of irrepealable rights under the terms of the celebrated *Dartmouth College case.*   Since these Constitutions were passed, the decisions of our own Courts, and those of the Supreme Court of the United States upon similar provisions, have declared that the Legislatures, in dealing with corporations incorporated under such Constitutions, had only limited powers of contract, and that, as such limited agents, it was conclusively presumed that in every charter or grant made to a corporation incorporated by it, there was written by necessary implication the right of subsequent Legislatures to "alter, amend or repeal said charters at their pleasure." *Co. Com.* v. *Franklin Railroad Company,* 34 Md. 163 ; *State* v. *Northern Central Railway Co.,* 44 Md. 165 ; *Appeal Tax Court* v. *Baltimore Academy,* 50 Md. 448; *Jackson* v. *Walsh,* 75 Md. 308 ; *Louisville Water Company* v. *Clark,* 143 U. S. 1; *Hamilton Gaslight Company* v. *Hamilton City,* 146 U. S. 270 ; *Railroad* v. *Georgia,* 98 U. S. 364 ; *Schurz* v. *Cook,* 148 U. S. 410 ; *Keokuk Company* v. *Missouri,* 152 U. S. 317 ; *Mercantile Bank* v. *Tennessee,* 161 U. S. 170.

The appellee having derived its charter under the Act of 1854, when the Constitution of 1850 was in force, and the exemption from taxation claimed, being a part of such charter, the power of the Legislature to repeal or revoke the immunity thus granted is, we think, too clear to be questioned.   The fact that no such right was reserved in the Act of 1854, incorporating the appellee, can make no difference.   The Constitution is the supreme and controlling law, and, under its provisions, the right to alter, amend or repeal every charter granted by the Legislature to a private corporation is reserved as fully as if such reservation had

been made in the charter itself. *Miller* v. *State*, 15 Wallace, 478 ; *Tomlinson* v. *Jessup, id.* 457 ; *Fletcher* v. *Peck*, 6 Cranch, 136 ; *Terrett, et al.,* v. *Taylor, et al.,* 9 Cranch, 51; *Phinney* v. *Sheppard, etc., Hospital,* 88 Md. 638 ; *Citizens' Savings Bank* v. *Owensboro,* 173 U. S. 646.

It would be a strange anomaly in the law if the original charter, as decided in 44 Md. , should be always subject to alteration, amendment or repeal, and yet the alteration or amendment made to it by a subsequent Legislature of 1880 should have greater sanction and power than its original creation.    In other words, it is a contention of the defendant company that you can repeal or amend a charter, but you cannot repeal or amend an amendment to it, which, by every construction of law becomes a part of the original instrument.

Assuming, for the sake of the argument, that it was in the power of the Legislature of 1880 to make an irrepealable contract, for a good and sufficient consideration, to exempt the railroad company from taxation, nevertheless, the terms of said Act and the facts established in the evidence show that the Act of 1880 did not confer a complete exemption upon the company.

The only possible considerations moving from the railroad company which are referred to in said Act are, first, the controversy between the railroad company and the State of Maryland regarding the exemption from taxation, granted under the charter of 1854 ; secondly, "the right to have the question at issue between it and the State of Maryland carried to the Supreme Court of the United States to be there decided;" and thirdly, the payment of the sum of $29,762,56.   This contract is not only in writing, but is evidenced by the solemn form of an Act of Assembly.   It is clear under every principle for the construction of a contract that only such considerations as are set forth in the written instrument can be proven in the transaction, and where a different kind of consideration cannot be proven only a ailure of consideration can be shown.   The controversy

referred to in the Act does not in itself make that contro-
versy a consideration—it merely recites the transaction be-
tween the parties which is in dispute. "A plea stating
merely that the amount was in dispute, and that the debtor
agreed to pay it in consideration of a promise by the credi-
tor does not set forth a sufficient consideration." *Emmits-
burg Railroad Company* v. *Donoghue,* 67 Md. 383.

Then the payment of the sum of $29,762.56 is only re-
ferred to in sections 2 and 3 of the Act of 1880, and is ex-
pressly declared to be in full satisfaction and discharge of
the then existing claims for taxes due by the company up
to December 21, 1879. It cannot be taken by any con-
struction to be intended as a consideration for any other
purpose. Moreover, it could not be a consideration for an
additional promise aside from the payment of the taxes then
due under the pending suits. The evidence shows that four
years prior to this settlement, the Court of Appeals of this
State in this identical transaction had conclusively decided
that the company was responsible for these taxes. The
amount of the tax and the manner of its ascertainment was
not in dispute. There was nothing remaining but the pay-
ment of the debt. It has been the general decision of our
Courts that an agreement to take a less sum in considera-
tion of a debt is not a good consideration for another prom-
ise even regarding the residue of the same. "Payment of
part of a debt is neither in law nor in equity a good con-
sideration for abandoning claim for the residue." *Gurley*
v. *Hiteshue,* 5 Gill, 217. "An agreement to relinquish the
interest due on the debt to obtain payment of the principal
is without consideration, and the creditor may recover such
interest." 67 Md. *supra.*

We now come to the only possible remaining considera-
tion set forth in the agreement, and that is, the right to have
the question carried to the Supreme Court of the United
States. It must be remembered that this is a contract for
exemption from taxation, and, therefore, to be most strictly
construed in favor of the State. Applying this principle to-

the express statement of this consideration, as explained by the uncontradicted proof in the case, we find that at the time when this agreement was made there was no valid and subsisting right on the part of the railroad company to have this question at issue decided by the Supreme Court of the United States. At that time the cases had not been prosecuted to judgment in the lower Court. No appeal to the Supreme Court could be in existence until the entry of a judgment in the lower Court and its affirmance by the Court of Appeals. It is therefore submitted that there is a failure of this consideration, as shown by the evidence, and that there is, therefore, no legally sufficient evidence of a valid consideration for the support of this contract.

Again, by numerous decisions of the Supreme Court of the United States, an exemption from taxation will never be presumed if there is any construction of the language used which will preclude such exemption. The words of the statute regarding exemption from taxation are to be construed most favorably to the State, and most strongly against the party claiming the exemption. This construction is carried to the limit of construction *strictissimi juris. Delaware Tax Case*, 18 Wallace, 206; *Ohio Life Insurance Company* v *Debolt*, 16 Howard 435; *Vicksburg Railroad* v. *Dennis*, 116 U. S. 665; *Phœnix Insurance Company* v. *Tennessee*, 161 U. S. 177; *Annapolis and Elkridge Railroad Company* v. *State*, 47 Md. 592. "A provision in an Act requiring a railroad company to annually pay into the State treasury a certain tax upon its capital stock is not a contract exempting the company from any additional tax." *Minot* v. *P. W. & B. Railroad Co.*, 18 Wallace 206. See also *Ry. Co.* v. *Philadelphia*, 101 U. S. 528.

Assuming the Act of 1880 to be a contract merely, and not in any sense the grant of a privilege, it is manifest that there was no power in the Legislature to bind subsequent Legislatures by making an agreement with one particular corporation to give it a special rate of taxation. Such a contract would have been an express violation of section 15

of the Bill of Rights of the Constitution of this State. By
the uniform decisions of this Court, this section of the Bill
of Rights has been construed as requiring all tax laws to
be uniform as to the property to be taxed, such uniformity
to be shown in the law either as to the subject-matter of
taxation or the district in which the taxation is to be exer-
cised. Exemptions from taxation have been of course
recognized by our Courts, but in every instance the ground
of such exemption has been the principle of public policy,
that such exemptions were beneficial to the interests of the
people of the whole State or community.

But in the case at bar it must be remembered that no
question as to the grant of a privilege can be considered,
for under this construction of the case, and in order to
avoid the right of the Legislature to repeal the amend-
ment, the appellee must contend that the Act of 1880 is
only a contract, and that its rights are purely contractual
and not those arising from a charter. It is manifest that
such contractual rights, not being chartered ones, can only
be for private interests and for the peculiar benefit of the
contracting party. No question of public interests can
therefore arise, and, under such circumstances, it is sub-
mitted, that any such right to confer a special privilege
upon one corporation, as against all the other similar cor-
porations in the State, would be a most flagrant violation
of the law of uniformity in taxation, which is required by
Article 15 of the Bill of Rights. If such a principle could
be successfully established, then it would be in the power
of any Legislature to compound the taxes of any citizen or
corporation for all time to come for any consideration
which it might deem proper. Surely a proposition, fraught
with such dangers to the rights of every citizen that all
should contribute equally to the public support through
taxation, will not be sanctioned by the highest tribunal of
this State.

Assuming that a consideration is essential, there was *a
complete failure of consideration* for the alleged contract.

It is clear that the sufficiency of the consideration should be established. But the right of appeal alleged to be the consideration, even if it existed at that time, was a mere formality and no substantial benefit could have been derived from it. *Shields* v. *Ohio*, 95 U. S. 323; *Railroad Co.* v. *Georgia*, 98 U. S. 363.

*Bernard Carter* and *John J. Donaldson* for the appellee.

I. The State of Maryland, by the Act of 1880, chapter 16, which Act was accepted according to its terms by the Northern Central Railway Company, entered into a valid contract with said company, and upon the terms and conditions set forth in the Act, upon legal and valuable considerations moving to the State from the company whereby the State agreed that no tax should ever be imposed under the laws of the State of Maryland, upon the property, franchises or gross receipts of the company, except an annual tax of one-half of one per cent on the gross receipts of the company within the State of Maryland. The company having fully complied with all of said terms, and fulfilled all of said conditions, said contract remained forever binding upon the parties until put an end to by the consent of both parties, and could not, therefore, be impaired or abrogated by the sole Act of the State of Maryland; that, therefore, the imposition of any greater tax than one-half of one per cent annually upon the gross receipts of the company being unlawful, there can be no recovery against the appellee of the one per cent imposed by the Act of 1890, chapter 559 upon the gross receipts within the State of Maryland, of railroads heated by steam, even if the Act of 1890, chapter 559, was intended to be applicable to the appellee, and to operate as a repeal of the Act of 1880, chapter 16.

The consideration for the contract thus entered into was the compromise and settlement of the pending litigation between the State and the company mentioned in the Act, in which litigation was involved the question of the right of the State to levy *any* tax upon any of the property,

franchises, or gross receipts of the company; and the consideration received by the State was the agreement thereby made upon the part of the company to pay forever to the State, taxes on its gross receipts to the extent metioned in the Act, and the payment of the certain sum of money in the Act mentioned.   That the contract was supported by a sufficient consideration, moving from the company, appears, therefore, on the face of the Act, of which Act the preamble is an important part, and furnishes the key-note to its construction.   The contract thereby made between the State and the company was a settlement of all *disputed questions* upon the subject of taxation then existing between the State and the company, under which the company paid a large sum of money to the State, none of which it owed according to its contention, and agreed to pay forever an annual tax of one-half of one per cent on all its gross receipts in Maryland, thereby abandoning to this extent, its claim to exemption from taxation, and its right to have decided by the Supreme Court of the United States the question whether it was liable to pay anything at all.   (*a.*) Either the compromise of a doubtful claim, or the relinquishment of a pending suit, is a good consideration for a promise ; and to support a compromise it is sufficient that the parties entering into it, thought at the time that there was a *bona fide* question between them, although it may eventually turn out there was, in fact, no such question. *Callisher* v. *Bischofheim*, L. R. 5 Queen's Bench, 451; *Hartle* v. *Stahl*, 27 Md. 172 ; *Union Bank* v. *Geary*, 5 Peters, 114. (*b.*) Inasmuch as in the cases of the *State of Maryland* v. *N. C. Ry. Co.*, 44 Md., page 131, there was drawn in question the validity of the Statutes of Maryland repealing the exemption claimed by the said company by virtue of the Act of 1827, chapter 72, section 20, on the ground of their being repugnant to the Constitution of the United States, which prohibits a State from making any law impairing the obligation of a contract, and the decision of said Court was in favor of their validity, there could be no doubt that a

writ of error would have laid to the Supreme Court of the United States, on behalf of the company, from the final judgment when it should have been rendered by the Court of Appeals after a retrial in the Superior Court. *Cohens* v. *Va.*, 6 Wheat. 264 ; *Cromwell* v. *Randall*, 10 Peters, 368 ; *University* v. *People*, 99 U. S. 320.

And as no retrial of the cases had yet taken place in the Superior Court of Baltimore City, and until that trial and a judgment rendered therein against the company, and an affirmance of that judgment by the Court of Appeals of Maryland, no writ of error would lie to the Supreme Court of the United States, the company, at the time of the passage of the Act of 1880, chapter 16, still had the right to take the cases to the Supreme Court of the United States.

(*c.*) As the powers of the General Assembly of Maryland are limited only by the provisions of the Constitution of the State and of the United States, the Legislature of 1880 had the undoubted and unlimited power, to determine whether the decision of the Supreme Court of the United States, in case a writ of error had been sued out by the company, was sufficiently a matter of doubt as to make it wise for the best interests of the people of the State, to make the compromise and settlement of the then pending litigation. *M. & C. C. of B.* v. *State*, 15 Md. 387, 388, 472, 473; *Jackson* v. *Walsh*, 75 Md. 313.

The General Assembly being therefore clothed with full power to deal with the subject by an Act of Assembly passed by it, and approved by the Governor, as required by the Constitution of Maryland, and having in the exercise of this power determined, and evidenced its determination in the Act of 1880, chapter 16, that the result of the litigation which the company had the indisputable right to carry to the Supreme Court, was of a sufficiently doubtful character to make it for the best interest of the State to make the compromise which is made by the said Act, this action of the State in 1880 is forever conclusive upon it, and it is not within the judicial power of the State to inquire as to

the question whether the Legislature was mistaken in the opinion that the result of the litigation was a matter of doubt. But even if this Court could inquire into and decide the question whether the result of the litigation when carried to the Supreme Court was a matter upon which there could be at the time of the passage of the Act of 1880, a *bona fide* difference of opinion, the Court could not reach the conclusion that such was not the case. See JUDGE ALVEY's dissenting opinion in 44 Md.

Therefore, inasmuch as the difference in the result reached by the majority of the Court in the said case in 44 Md. 131, and in the result reached by the minority, depended altogether upon the different construction placed by each upon the instrument relating to the said rights and immunities, and from which they emanated, it is impossible to affirm that the parties to said instrument could not *bona fide* believe that the decision of the Supreme Court of the United States, when it came to construe said instrument, might not agree with the minority.

Now, while the Supreme Court of the United States has in several cases held that a consolidation of railroad companies by an Act of the Legislature may so operate as to make the charter of the consolidated company thenceforth amendable or repealable at the will of the Legislature, where there is a general statute or constitutional provision declaring that all charters passed subsequently to the adoption of the constitution or the general Act, should be amendable and repealable, and that under this power the State may take away immunities from taxation which, prior to the consolidation, had belonged to one of the companies, and in the consolidating act had been transferred to the consolidated company, yet the said Court has *uniformly* held that whether such a construction is to be put upon any particular Act authorizing the consolidation of companies, must depend upon the particular terms of the Act and the intention of the parties. *Central R. R.* v. *Georgia*, 92 U. S. 670 ; *Branch* v. *Charleston*, 92 U. S. 677 ; *117 U. S.*, 139, 149 ; *152 U. S.*, 305.

Therefore, as the true meaning and effect of the Maryland Act of 1854, chapter 250, and of the consolidation effected thereunder was the subject of directly diverse views by the majority and minority of the Court, there was the amplest ground for the Legislature *bona fide* to believe that the conclusion of the Supreme Court of the United States was a matter of sufficient uncertainty as to warrant the Legislature in determining to deal with the matters in controversy between the State and the company just in the way the Act of 1880 dealt with them.

It will be seen from the foregoing, that when the Act of 1880, chapter 16, was passed, there had been a serious controversy between the State and the company, as to which litigation had ensued, and which it was understood was to be further pursued if not compromised and adjusted ; and under such condition, and for the purpose expressly declared by the Act of adjusting and *settling finally by agreement* all such pending controversies, the Act was passed.

It will be further observed that every essential ingredient to a valid legal contract is involved in the situation, namely :

1. A pending controversy and conflict as to rights asserted to be possessed by each of the parties inconsistent with each other.    2. A consensus of the parties, expressive of their intent to finally settle and adjust the difference.    3. A stipulation of several conditions as the basis of adjustment, which involved payment of a specific sum of money, and formal acceptance and fulfillment of such conditions by the company before the act should become operative.    4. Subsequent payment by the company of the sum of money stipulated, and actual observance and fulfillment by it of the stipulated conditions.    5. The acceptance by the State of the beneficial fruits of the contract, and its recognition of the binding force thereof.

The contract thus entered into between the State and the company, was an executed contract made upon valuable consideration, and one which the State of Maryland had a right to make, and being valid when made, it could not

under the Constitution of the United States, be put an end
to or impaired by any Act of the State of Maryland, with-
out the consent of the new company, the other contracting
party.  *Fletcher* v. *Peck*, 6 Cranch, 135 to 139 ; *Poindexter*
v. *Greenbrow*, 114 U. S. 277 to 280; *Jackson* v. *Walsh*, 75
Md. 313 ; *Bramble* v. *State*, 41 Md. 442.

It is to be noted that the question here is not whether the
Legislature of Maryland can enter into a valid contract with
a corporation which has been chartered by the State of
Maryland, and which is subject in all respects to the tax
laws, and having no valid exemption from taxation under
its charter, whereby the State, upon a consideration paid to
it by the corporation, agrees never thereafter to exact more
than a certain amount of annual taxation.  Suppose, for
illustration, a company chartered since 1851, and in refer-
ence to which, therefore, the power of the State to tax it,
does not admit of question.  Suppose, further, that subse-
quently to its charter the corporation should propose to pay
to the State a certain amount in cash at the time the con-
tract was entered into, on condition that the State entered into
a contract, which it did enter into, that thereafter it should
not be subject to any taxation in the future, or a taxation
at a specified rate, lower than what other similar corpora-
tions would be subject to, would such a contract be binding
on all subsequent Legislatures ?   Whatever may be held
in reference to such a contract, the question now for decis-
ion *is an altogether different question.*

For the question here is, where there being a controversy
whether all the property of the Northern Central Railway
Company was not forever exempt from taxation, a Legisla-
ture of the State was not authorized to compromise that
controversy by entering into an inviolable contract with the
company, whereby the State secured forever a payment each
year, of taxes to a certain extent upon the property of the
company, instead of running the risk of a decision that all
property of the company was forever exempt.

In reference to the contention of the State that a Legis-

lature subsequent in date to the Legislature of 1880 was authorized to repeal the Act of 1880, and set aside the contract thereby made, it is to be further noted: 1. The ground upon which the right to repeal is rested, is that under the Constitution of Maryland, all charters granted to corporations may be altered or repealed. 2. Now the Act of 1880, chapter 16, is in no way a charter or an act of incorporation. When the Act of 1880 was enacted, the Northern Central Railway Company was a *complete corporate entity*, possessed of all the rights, powers and franchises necessary to the business for which it was created, and which it had theretofore been, for a considerable period, actually exercising, and that no power or franchise other than that of which it then claimed to be fully possessed was granted to or conferred upon it by the said Act. And, accordingly, JUDGE DENNIS, in his opinion, says:

." While every charter is commonly said to be a contract between the State and the incorporators (very inaccurately so stated, according to the true definition and idea of a contract and charter respectively, as now adopted by the best authorities), yet, even if it be conceded that a charter is a contract, it by no means follows that every contract is a charter, or modification of a charter, even though such contract may have reference to some of the sovereign powers of the State.

" In the present case, it is clear that the Act of 1880 was neither a charter nor modification of the defendant's charter. It invested it with no additional *corporate* powers or rights; it left them unaltered as they stood; and simply provided that, for consideration satisfactory to the State which were offered by the company, the State would subject its property to a certain fixed method and rate of taxation. The constitutional provision was never intended to interfere with the right of the State to enter into such contracts when it deemed it proper to do so for its own benefit and protection; and such a contract is just as obligatory upon the State as if it was made between it and a private person;

and cannot be repealed, under the provision of the Constitution of the United States forbidding the State to pass any law impairing the obligation of contracts, without the consent of both parties to it."

II. But even if the Legislature at the time of the passage of the Act of 1890, chapter 559, had the power to abrogate the contract entered into by the State of Maryland with the railroad company, as set forth in the Act of 1880, chapter 16, by the repeal of said Act, yet the Legislature did not intend to exercise this power by the passage of the Act of 1890, chapter 559.

Repeals by implication are things disfavored by law, and never allowed but when the inconsistency and repugnance between the earlier and later statutes are plain and unavoidable. Therefore, even if laws and statutes *seem contrary to one another*, yet if by interpretation they may stand together, they *shall* stand; and when two laws only so far disagree and differ as that by any other construction they may both stand together, the rule that later laws abrogate earlier contrary ones, does not apply, and the later is no repeal of the earlier. *Mayor, etc.*, v. *Magruder*, 34 Md. 386, 387; *State* v. *N. C. Ry. Co.*, 44 Md. 167; *Webb* v. *Ridgely*, 38 Md. 364; *Garrett* v. *Janes*, 65 Md. 260, 266, 267; *Garritee* v. *M. & C. C. of P.*, 53 Md. 422; *Snowden* v. *State*, 69 Md. 208; *Blaine* v. *Bailey*, 25 Ind. 165; *Cole* v. *Lopensas*, 11 Ia. 554; *Pac. R. Co.* v. *Cass Co.*, 53 Mo. 28. Accordingly it is well settled that a later statute of a general nature does not effect the repeal of a special one, unless direct reference is made to the latter with that intent; or unless in terms they are so irreconcilable, that a repeal by implication is manifest. 65 Md. 266.

SCHMUCKER, J., delivered the opinion of the Court.

This appeal presents the interesting and important question whether so much of the Act of 1880, ch. 16, as granted to the appellee an exemption from taxation on the gross revenues from its property in Maryland, beyond the

annual rate of one-half of one per cent was subject to re-
peal by subsequent Legislatures.   If it is determined that
the Act was subject to repeal, then the further question
arises whether it was in fact repealed by the Act of 1890,
ch. 559, which imposed a tax of one per cent per annum
on the gross receipts of all railroads in the State operated
by steam.

A proper consideration of the issues thus presented in-
volves the ascertainment of the status of the appellee in
reference to liability for taxation prior to the passage of the
Act of 1880, the nature and operation of that Act, and the
operation and effect of the Act of 1890 as a repeal of so
much of the Act of 1880 as granted to the appellee a par-
tial exemption from taxation.

It may assist us in arriving at a clear understanding of
the case to review briefly the corporate history of the ap-
pellee.

The Act of 1827, ch. 72, incorporated the Baltimore and
Susquehanna Railroad Company to operate a railroad from
Baltimore to the Susquehanna River, and conferred upon it
immunity from taxation.

By the Act of 1854, ch. 250, the stockholders of Balti-
more and Susquehanna Railroad Company were authorized
to unite and consolidate with three Pennsylvania corpora-
tions, which were then operating connecting railroads, so as
to form one corporation to be called " The Northern Cen-
tral Railway Company," on such terms and conditions and
in accordance with such regulations and agreements as the
several companies might adopt.   Similar authority for the
consolidation on the part of the Pennsylvania corporations
having been procured from the Legislature of that State,
articles of union were executed by all of the corporations,
by which, among other things, they transferred to the new
company the property, rights, privileges and immunities
which had theretofore belonged to the several old compa-
nies.   It is not necessary to state in fuller detail the various
terms of this consolidation or the transactions by means of

which it was accomplished for the legal operation and effect of it upon the liability to taxation of the new corporation, which is the present appellee, has been carefully considered and passed upon by this Court in the case of the *State* v. *The Northern Central Railway Co.*, 44 Md. 131, which will be referred to more at large hereafter.

The appellee enjoyed the exemption of its property in Maryland from taxation, thus secured to it by the Act of 1854, down until 1866, when the Legislature passed a general assessment law, which provided for the assessment of all property in the State, and also repealed in general terms all laws exempting property from taxation. The Act of 1870, ch. 362, also contained a clause repealing " every provision contained in the charter, or supplements thereto, of every railroad company incorporated by the laws of this State or contained in any law heretofore passed by the Legislature of this State whereby the stock or property, real or personal, of any railroad company   *   *   *   is exempted from taxation." Then followed the Act of 1872, ch. 234, which imposed a tax of one-half per centum annually upon the gross receipts of steam railroads.

Under the last-mentioned law a tax was levied on the appellee of one-half per cent of the gross receipts of its Maryland property for part of the year 1872, and all of the year 1873. This tax the appellee refused to pay and the State brought suit to recover it, and the judgment being against the State it brought the case here on appeal, and it is reported in 44 Md. 131. This Court held the appellee to be liable for the tax and reversed the judgment of the lower Court. In deciding that case it became necessary for this Court to examine carefully into the corporate history and legal status of the appellee and to consider and pass upon all of the legislation to which we have referred which had then been enacted, as well as the transactions of the four former corporations incident to their consolidation into the Northern Central Railway Company.

The Court in its opinion in that case announced a num-

ber of conclusions which have a material bearing upon the case at bar.    They are as follows :

*First.* That the appellee was created and derived its existence from the Act of 1854, ch. 250, and was in no sense created by the articles of union executed by the several consolidating corporations from the union of which it sprung.

*Secondly.* That the rights and privileges, including exemption from taxation granted to the Baltimore and Susquehanna Railroad Co. by the Act of 1827 were, in the consolidation of the four companies, conferred on the appellee, not by transfer from the Baltimore and Susquehanna Railroad Company, but as new and special grants under the Act of 1854, which created the appellee as the new corporation.

*Thirdly.* The Constitution of 1850 having been in operation when the Act of 1854 was passed, and the exemption from taxation having been part of the charter granted by that Act to the appellee, the power of the Legislature to repeal or revoke the exemption thus granted, whenever in its judgment the public interest required it, was too clear to be questioned.

*Fourthly.* The general assessment law of 1866 and the Act of 1870, ch. 362, contained a plain and unambiguous expression by the Legislature of its intention to repeal this exemption, and those Acts in fact accomplished its repeal.

*Fifthly.* The Act of 1872, ch. 234, imposing an annual tax of one-half per cent upon the gross receipts of steam railways was a valid exercise of the taxing power of the State, and the appellee was liable thereunder to the tax at that rate on the gross receipts from its property in Maryland.

After the case had been remanded by the decision in 44th Md. and before it had been retried in the lower Court the Act of 1880, ch. 16, was passed.    This Act is described in its preamble as one to adjust and finally settle by agreement the pending tax controversies between the State and

the company by making the latter thereafter liable to taxa-
tion to a certain extent and providing for the payment of
certain indebtedness claimed by the State from the company,
and it is declared to be *"An Act supplementary to the Act
of eighteen hundred and fifty-four, chapter two hundred and
fifty,"* which was held by this Court in 44th Maryland to
constitute the charter of the appellee.   No further change
in the situation occurred until the State, by the Act of 1890,
ch. 559, raised the annual rate of tax upon the gross re-
ceipts of steam railroad companies to one per cent.   The
appellee paid the increased rate of tax, upon the gross re-
ceipts of its property in Maryland, under protest, until 1896
when it refused to do so any longer, and the present suit
was brought to recover the tax for the year 1896.   The
case was tried before the Court below without a jury, and
the Judge, by his ruling on the prayers, held that the Act
of 1880 constituted a contract irrepealable without the
consent of the appellee, by which it was exempted from
paying more than one-half per cent tax upon its gross rev-
enues, and he rendered a verdict and entered up judgment
accordingly, from which the State appealed.

   This brings us to the consideration of the most import-
ant question presented by this appeal, that is, whether the
passage by the Legislature of the Act of 1880 and its ac-
ceptance by the appellee constituted a contract between it
and the State which it was beyond the power of the Legis-
lature to repeal or impair.

   The Act of 1880 is declared upon its face to be supple-
mental to that of 1854, and it grants to the appellee the par-
tial exemption from taxation in almost the identical words
in which the former Act granted the complete exemption.
The practical effect of the later Act upon the prior one,
which was the charter of the appellee, was to so amend it
as to substitute the partial for the complete exemption.  The
same constitutional provision touching the formation of
corporations, which provided that all laws passed in pur-
suance thereof should be subject to alteration or repeal,

was in force when each of the two laws was passed. If by reason of this provision of the Constitution it was not competent for the Legislature to grant to the appellee an irrepealable exemption from taxation by the Act of 1854, which constituted its charter, it cannot be successfully contended that the Legislature could make a valid grant of such an exemption by an Act passed in 1880, which was supplemental to or amendatory of the former Act, unless the feature which we shall hereafter notice in the Act of 1880 so distinguishes it from the laws contemplated by the section of the Constitution to which we have referred, as to take it out of the operation of that section.

This Court in the opinion in the case in 44th Md., in commenting upon the effect of the Constitution of 1851 upon the Act of 1854, say : " In accepting the Act of 1854 and in the execution of the articles of union under the operation of which the Baltimore and Susquehanna Railroad has merged and ceased to exist, the stockholders are presumed to have known that the corporate powers and privileges granted by that Act to the Northern Central Railway Company were subject to the provisions of sec. 47, Art. 3, of the Constitution, and that the exemption from taxation claimed under that Act was liable to be repealed by the Legislature whenever in its judgment the public interests required it. *Be that, however, as it may, it was not within the power of the Legislature under the Constitution of the State to grant to the appellee immunity from taxation or any other corporate privilege beyond the power of a subsequent Legislature to repeal or revoke.*" It is to be observed that the Court does not rest the inability of the Legislature to grant to a corporation an irrepealable exemption from taxation upon the form or character of the particular statute then under consideration, but puts it upon the broad ground of the want of power in the Legislature under the Constitution to make such a grant at all. The Court certainly in effect determines that any form of law which grants to a corporation such a corporate privilege as immunity from taxation is one

passed pursuant to the section of the Constitution referred to, and is therefore subject to alteration or repeal by future Legislatures.

If this construction of the Constitution be correct, how can we escape the conclusion that the Legislature of 1880 had no greater power, by the passage of the Act upon which the appellee bases its claim to a partial exemption from taxation, to grant that exemption in an irrepealable form, than the Legislature of 1854 had to grant a total exemption in like form by the Act which it passed, and which this Court has held to be subject to repeal at any time? The appellee attempts to answer this query by calling attention to the fact that the Act of 1880 differs from that of 1854 in the essential particular that it, upon its face and especially in its preamble, professes to have been passed for the purpose of adjusting and settling by agreement the controversies which were then pending between the State and the appellee in reference to the extent and validity of the claims of the latter to exemption from taxation, and that the contents of the Act itself show that the appellee in accepting it and complying with its terms gave up a valuable right of appeal to the United States Supreme Court, and paid a large sum of money to the State, thus supplying a valid consideration which made the action of the State binding and permanent. Without going into the contents of the Act in detail or fully reciting the things done upon the faith of it by the appellee it may be conceded that if there were no constitutional difficulty in the way, the transaction between the State and the appellee, as part of which the Act of 1880 was passed, was one so far in the nature of a contract or agreement that neither party could abrogate it without the consent of the other.

The difficulty with the appellee's contention is that the inability of the Legislature under the Constitution to make in 1880 a valid and irrepealable grant of such a corporate privilege as immunity from taxation, did not rest upon the want of a sufficient consideration for the grant, but upon the

fundamental want of power in the Legislature to make it by reason of the provisions of the Constitution which is the supreme and controlling law of the land. It is plain, therefore, that the question of consideration *vel non* cannot be a controlling one in determining the question now at issue. If, as this Court has decided in 44 Md., the appellee in executing the articles of union, under the Act of 1854, must be presumed to have known that the privileges granted by that Act were subject to the provisions of the Constitution and repealable at any time, so must the appellee in accepting the provisions of the Act of 1880 be presumed to have known that the immunity from taxation granted by that Act was in like manner and for the same reasons subject to repeal by future Legislatures.

If the Act of 1880 had been passed prior to the adoption of the Constitution of 1850, we would, under the decisions of this Court in *Tax Cases,* 12 G. & J. 117; *The State* v. *The B. & O. R. R. Co.,* 48 Md. 71; *The State* v. *The Northern Central R. R. Co.,* 44 Md. at p. 162, and *The County Commissioners* v. *A. & E. R. R. Co.,* 47 Md. 611, and of the United States Supreme Court in *Miller* v. *The State,* 15 Wal. 448, and other cases, have been compelled to uphold its validity beyond the power of subsequent Legislatures to repeal or impair, even though its operation would be to tie the hands of all future Legislatures and practically alienate the sovereign right of taxation, but in view of the language already referred to, used by the Court in 44 Md., the privilege of partial immunity from taxation conferred on the appellee by the Act of 1880 must be held to have been subject to repeal by subsequent Legislatures.

The question remaining for consideration is whether the Act of 1890, ch. 559, repealed the exemption from taxation claimed by the appellee under the Act of 1880. We think that the exemption was so repealed both because the language of the repealing clause contained in the later Act was broad enough to cover it and because of the plain inconsistency of the provisions of the two Acts. The Act

of 1890 declares that the tax thereby provided for shall be
levied annually upon the gross receipts of "*all railroad
companies whose roads are worked by steam, incorporated by
or under the authority of this State, &c.*,   *   *   and *doing
business in this State*" and it requires "*each and every rail-
road company*" to annually make report under oath of its
gross revenues and transmit the amount of the tax to the
comptroller and provides that "*if any officer of any such
corporation or company*" shall make a false statement in
such report he shall be guilty of perjury.    The repealing
clause of the Act repeals "*All Acts or parts of Acts in con-
flict herewith.*" The language thus used by the Legislature
plainly indicates a purpose to apply a uniform rate and
method to the taxation of all steam railroads within the State
and to repeal, so far as it could, all prior laws which in-
terfered with the consummation of that purpose.

Apart from the express repeal of all inconsistent laws by
the Act of 1890, the scheme and purpose of that Act, as
gathered from the comprehensive expressions used in de-
scribing the subjects of its operation, are entirely inconsist-
ent with those of the provisions of the Act of 1880 which,
if they remained in force, would exclude the appellee from
the operation of the later Act.

The subject of the implied repeal of an existing law by
the enactment of a later one, whose provisions are incon-
sistent with it, has frequently been the subject of consider-
ation by this Court, and the substance of its conclusions
has been well stated by the former CHIEF JUDGE ALVEY in
*The W. M. R. R. Co.* v. *The Appeal Tax Court*, 50 Md.
296, as follows : "The general doctrine on the subject of
implied repeals is that when there are two Acts on the same
subject both are to be given effect if possible.    If, however,
the two Acts are plainly repugnant to each other in any of
their provisions the later Act, without any repealing clause,
will operate, to the extent of the repugnancy, as a repeal of
the first ; and even where the two Acts are not in express
terms repugnant, yet if the later Act covers the whole sub-

ject of the first and embraces new provisions showing that it was intended as a substitute for the first Act, it will oper- ate as a repeal of that Act."

Tested by the principles thus laid down the Act of 1890, which by its express terms imposes a tax of one per cent upon the gross receipts of all railroads worked by steam within the State, must be held to be so inconsistent with that part of the Act of 1880 which provides that the appellee shall not pay a greater tax upon its gross receipts than one-half of one per cent, as to effect a repeal thereof.

If we were in doubt as to the legal operation of the Act of 1890 upon that of 1880, and thought it equally suscept- ible of either of the two constructions contended for, it would be our duty to adopt the construction which would tend to effectuate rather than the one which would tend to defeat the intention of the Constitution that taxation should be fair and equal in proportion to the value of the property assessed. Such a construction of the provisions of the later of the two Acts, now under consideration, would require us to hold that they repeal the exemption from taxation granted to the appellee by the former one,

It follows from what we have said that the judgment ap- pealed from must be reversed and the case remanded.

*Judgment reversed.*

(Decided January 10th, 1900).