## WILLIAMS, RECEIVER OF THE WASHINGTON, BALTIMORE & ANNAPOLIS RAILROAD CO., *v.* MAYOR AND CITY COUNCIL OF BALTIMORE *

No. 513. Argued February 13, 1933.—Decided March 13, 1933

---

* Together with No. 514, *Williams, Receiver,* v. *Mayor, Counselor and Aldermen of Annapolis.*

*Messrs. George Weems Williams* and *William L. Rawls,* with whom *Mr. William, L. Marbury, Jr.,* was on the brief, for petitioner.

*Messrs. R. E. Lee Marshall* and *Lawrence B. Fenneman,* with whom *Mr. Hector J. Ciotti* was on the brief, for the Mayor and City Council of Baltimore, respondent.

*Mr. Roscoe C. Rowe* for the Mayor, Counselor and Aldermen of Annapolis, respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The controversy in these cases hinges upon the validity of a statute of Maryland, adopted by the General Assembly in June, 1931, whereby the property of a particular railroad was made exempt from taxation. Acts of 1931, c. 497.

For an understanding of the merits there is need that the statute be quoted in full.

"An Act to exempt the railroad property of the Washington, Baltimore and Annapolis Electric Railroad Company, or so much thereof as may be used for railroad purposes by said company, its receiver, successors and assigns, from all state taxes and charges, including contributions to the cost of construction of railroad crossings made or to be made under the authority of the State Roads Commission, and from all county and city taxes and charges in the nature of a tax for the years during which the property is so used, but not exceeding two years beginning January 1, 1931.

" WHEREAS, The Washington, Baltimore and Annapolis Electric Railroad Company did not in the year 1930 earn its operating charges, and it is of the utmost importance for the welfare of the State and particularly the communities served by said railroad, that the operation of said railroad be continued, and

" WHEREAS, It is in the judgment of the General Assembly of Maryland a wise and sound public policy to encourage the continued operation of said railroad by the exemption herein provided:

" SECTION 1. *Be it enacted by the General Assembly of Maryland,* That the railroad property of the Washington, Baltimore and Annapolis Electric Railroad Company, or so much thereof as may be used for railroad purposes by said company, its receiver, successors and assigns, be exempt from all State taxes and charges, including contributions to the cost of construction of railroad crossings made or to be made under the authority of the State Roads Commission, and from all county and city taxes and charges in the nature of a tax for the years during which the property is so used, but not exceeding two years beginning January 1, 1931.

" SECTION 2. And be it further enacted, That this Act shall take effect June 1, 1931."

At the passage of this act, the Washington, Baltimore and Annapolis Electric Railroad Company was in the hands of a receiver, appointed in January, 1931 by the Federal District Court. For ten years preceding the receivership the gross receipts from its business had progressively declined. In 1930 the total revenues derived from the operation of its line were $1,347,967.03, and the operating expenses $1,191,897.32. These expenses were exclusive of taxes and fixed charges, such as interest on its debts. There was a funded debt of more than nine million dollars and an unsecured debt of nearly a million. In 1930, 3,247,534 passengers had traveled on the road, which supplied the only rail service to Annapolis, the capital of the state. Large public interests were involved in keeping the service going.

The Mayor and City Council of Baltimore, and the Mayor, Counselor and Aldermen of the City of Annapolis, municipal corporations, challenged the validity of the exemption, and filed proofs of claim with the receiver for taxes overdue. The claim of the City of Baltimore was for real property taxes on the terminals and rights of way, for personal property taxes on the cars, and for franchise taxes or charges under a municipal ordinance. The claim of the City of Annapolis was for taxes on real property and for local taxes or charges owing for the franchise. The District Court upheld the validity of the statute, and disallowed the claims. Upon appeal to the Circuit Court of Appeals for the Fourth Circuit the orders were reversed upon the ground that the statute was invalid under the Fourteenth Amendment of the Federal Constitution and under several provisions of the Constitution of the State. 61 F. (2d) 374. Writs of certiorari were granted by this court. The writ in No. 513 brings up the claim filed with the receiver by the City of Baltimore; the writ in No. 514 brings up the claim of the City of Annapolis.

■ There is error in the holding of the Circuit Court of Appeals that the statute of Maryland creating this exemption is a denial to the respondents of the equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States.

A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator. *Trenton* v. *New Jersey,* 262 U.S. 182; *Newark* v. *New Jersey,* 262 U.S. 192; *Worcester* v. *Worcester Consolidated Street Ry. Co.,* 196 U.S. 539; *Pawhuska* v. *Pawhuska Oil Co.,* 250 U.S. 394; *Risty* v. *Chicago, R. I. & P. Ry. Co.,* 270 U.S. 378, 390; *Railroad Commission* v. *Los Angeles Ry. Corp.,* 280 U.S. 145, 156.

2. There is error in the holding of the Circuit Court of Appeals that the statute is invalid under the Constitution of Maryland.

Several provisions of that constitution are invoked by the respondents. They will be considered in succession.

(a) The statute is not repugnant to Article 15 of the Maryland Declaration of Rights wherein it is provided " that the levying of taxes by the poll is grievous and oppressive and ought to be prohibited; that paupers ought not to be assessed for the support of the Government; that the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and sub-classifications of improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, and uniform within the class or sub-class of improvements on land and personal property which the respecting taxing powers

may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community."

The courts of Maryland hold that the rule of uniformity established by these provisions does not forbid the creation of reasonable exemptions in furtherance of the public good. *Baltimore* v. *B. & O. R. Co.,* 6 Gill 288; *State* v. *B. & O. R. Co.,* 48 Md. 49; *State* v. *B. & O. R. Co.,* 127 Md. 434; 96 Atl. 636; *State* v. *N. C. R. Co.,* 44 Md. 131; *State* v. *P. W. & B. R. Co.,* 45 Md. 361; *Daly* v. *Morgan,* 69 Md. 460, 467; 16 Atl. 287; *B. C. & A. Ry. Co.* v. *Ocean City,* 89 Md. 89; 42 Atl. 922; *B. C. & A. Ry. Co.* v. *Wicomico Co.,* 93 Md. 113; 48 Atl. 853; *Havre de Grace* v. *Bridge Co.,* 145 Md. 491; 125 Atl. 704; *The Tax Cases,* 12 G. & J. 117; cf. *Gordon* v. *Appeal Tax Court,* 3 How. (U.S.) 133; *Picard* v. *East Tennessee, V. & G. R. Co.,* 130 U.S. 637, 641. It does not even prohibit an exemption in favor of an individual as distinguished from one for the benefit of the members of a class. All that it exacts in respect of the narrower exemption is the presence of a relation, fairly discernible, between the good of the individual and the good of the community. There must be something more than an arbitrary preference of one among many. *Baltimore* v. *Starr Church,* 106 Md. 281, 287, 288; 67 Atl. 261.

Furtherance of the public good is written over the face of this statute from beginning to end as its animating motive. "It is of the utmost importance for the welfare of the State and particularly the communities served by said railroad that the operation of said railroad be continued." "It is the judgment of the General Assembly" that "to encourage the continued operation" of the road by the grant of an exemption will be to give heed to the promptings of "a wise and sound public policy." The

exemption is to be confined to that part of the property of the company which is used for railroad purposes, is to continue only so long as the property is so used, and is to expire in any event at the end of the two years beginning in January, 1931. It is not the function of a court to determine whether the public policy that finds expression in legislation of this order is well or ill conceived. *Otis* v. *Parker,* 187 U.S. 606, 609; *Missouri, Kansas & Texas Ry. Co.* v. *May,* 194 U.S. 267; *Sproles* v. *Binford,* 286 U.S. 374, 388, 389. The judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful, an illusory pretense. Within the field, where men of reason may reasonably differ, the legislature must have its way. *Otis* v. *Parker, supra.* Nor in marking out that field will a court be forgetful of presumptions that help to fix the boundaries. "As underlying questions of fact may condition the constitutionality of legislation of this character, the presumption of constitutionality must prevail in the absence of some factual foundation of record for overthrowing the statute." *O'Gorman & Young* v. *Hartford Fire Insurance Co.,* 282 U.S. 251, 257. There has been no departure from that principle in the judgments of the highest court of Maryland. *Wampler* v. *LeCompte,* 159 Md. 222; 150 Atl. 455; 282 U.S. 172, 175.

We are told that the signs of an arbitrary preference are written on the statute because the exemption is confined to this particular insolvent when it might have been extended to all other insolvents engaged in a like business. There is nothing to show that any Maryland railroad other than this one was in the hands of a receiver. The assailants of the statute have the burden of proving everything essential to their case. *Pullman Co.* v. *Knott,* 235 U.S. 23, 25; *Wampler* v. *LeCompte, supra.* But the result will be no different if other insolvents be assumed. The public policy that made it wise in the judgment of

the legislature to help this particular railroad and keep its business going may have failed altogether in respect of any other railroad, solvent or insolvent. Here was a line carrying millions of passengers, and supplying the only railroad service between the capital of the state and its most populous city. The rescue of such a road might be dictated by the public interest when a road in some other territory might wisely be abandoned to its fate.

We are told that the statute is not to be distinguished in principle from the one considered by the highest court of Maryland in the case of the Starr Church, and there condemned as arbitrary. *Baltimore* v. *Starr Church,* 106 Md. 281; 67 Atl. 261. But we think the distinctions are many and obvious. A religious corporation, the Starr Church, had received a gift of wharf property which it leased for profit. The General Assembly passed an act exempting the wharf from taxes so long as it continued in the ownership of the church. The exemption for other churches was confined to a place of worship and a parsonage. The statute did not say that the new exemption was designed to promote the comfort or well-being of the community at large. For all that appeared no such interests were involved. The statute said no more than this, that the exemption would be "a great relief and benefit to said religious body," which was singled out for privileges denied to any other. This preference for one, with no profession of a purpose to advance the common weal and with nothing in the situation to indicate that such a purpose would be served, is the evil that the court denounced.

We are told that the many cases upholding an exemption to a railroad at the time of its formation have no bearing upon this exemption which was granted later on. A charter, so it is argued, is a contract, or becomes one when accepted. There is thus a *quid pro quo.* A privilege conferred thereafter is nothing more than a gratuity,

and hence an arbitrary preference irrespective of its motive. But this is to misread the cases and misconceive the rationale back of them. The charter exemption to a railroad does not gain validity from the circumstance that a charter is a contract. If the exemption is a valid one, the contract may mean that there will be no power of revocation, though exemptions not contractual are terminable at will. *Gordon* v. *Appeal Tax Court,* 3 How. (U.S.) 133. Even this difference will be absent if there is a reservation by the state of the power to repeal or change. *Northern Central Ry. Co.* v. *Maryland,* 187 U.S. 258, affirming *Maryland* v. *Northern Central Ry. Co.,* 90 Md. 447; 45 Atl. 465. Revocable or irrevocable, the contract will not give validity to what would otherwise be void. *Stearns* v. *Minnesota,* 179 U.S. 223, 254; *Duluth & I. R. R. Co.* v. *St. Louis County,* 179 U.S. 302; and cf. *Hudson County Water Co.* v. *McCarter,* 209 U.S. 349, 357; *Union Dry Goods Co.* v. *Georgia Public Service Corp.,* 248 U.S. 372, 375, 376. To see that this is so we have only to inquire what the consequence would be if a charter exemption were to be given to a mere private corporation, conducted for profit solely like any other business enterprise. Charter or no charter, the exemption would not stand. *Baltimore* v. *Starr Church, supra.*

The policy that sustains an exemption in order to keep a crippled railroad going is precisely the same as the one that sustains an exemption to set it going at the start. In the one case as in the other, the state maintains the highways upon which its people are dependent for their economic and social life. *Cole* v. *La Grange,* 113 U.S. 1, 7. It is idle to say that a railroad, when once it has been organized, is under a duty to go on, and hence that its distress is not important for any one except itself. Science has wrought her wonders, but the time is not yet here when trains will run under the impulsion of duty

without more. There is room, indeed, for question whether even the duty is so absolute as the respondents' argument assumes. *Railroad Commission* v. *Eastern Texas R. Co.*, 264 U.S. 79, 85. Certain it is, in any event, that operation may end with the consent of the Public Service Commission when the earnings are inadequate. Code of Public General Laws of Maryland, Bagby's ed., 1929 supplement, Art. 23, § 380; *Benson* v. *Public Service Comm'n*, 141 Md. 398; 118 Atl. 852 Nor is there need to show a probability of utter cessation or abandonment. Service is likely to be inefficient and even dangerous if operation is continued in the face of an increasing deficit. The state has an interest in seeing to it that railroads shall be run, but an interest also in how they shall be run.

The General Assembly, weighing these and other considerations, has found them adequate to justify a temporary exemption from the burdens of taxation. Nothing in the Constitution of Maryland or in the decisions of her courts enables us to say that there has been a clear abuse of power. We may not nullify for doubt alone. There must be something near to certainty. We do not reach it here.

(b) The statute is not repugnant to Article II, § 33, of the Maryland Constitution, wherein it is said that " the General Assembly shall pass no special law for any case for which provision has been made by an existing general law."

The highest court of Maryland has considered this provision, and defined its meaning and effect. *The Police Pension Cases*, 131 Md. 315; 101 Atl. 786; *Baltimore* v. *United Railways Co.*, 126 Md. 39; 94 Atl. 378; *Baltimore* v. *Starr Church, supra; Littleton* v. *Hagerstown*, 150 Md. 163; 132 Atl. 773; *O'Brian & Co.* v. *County Commissioners*, 51 Md. 15; *Hodges* v. *Baltimore Union Pass. Ry. Co.*, 58 Md. 603. There has been need, now and again, to

develop close distinctions. Our endeavor in what follows is to extract the essence of the decisions and to give effect to it as law.

Time with its tides brings new conditions which must be cared for by new laws. Sometimes the new conditions affect the members of a class. If so, the correcting statute must apply to all alike. Sometimes the new conditions affect one only or a few. If so the correcting statute may be as narrow as the mischief. The Constitution does not prohibit special laws inflexibly and always. It permits them when there are special evils with which existing general laws are incompetent to cope. The special public purpose will then sustain the special form. *Baltimore* v. *United Railways Co., supra.* The problem in last analysis is one of legislative policy, with a wide margin of discretion conceded to the lawmakers. Only in cases of plain abuse will there be revision by the courts. *Baltimore* v. *United Railways Co., supra,* at p. 52. If the evil to be corrected can be seen to be merely fanciful, the injustice or the wrong illusory, the courts may intervene and strike the special statute down. *Baltimore* v. *Starr Church, supra.* If special circumstances have developed, and circumstances of such a nature as to call for a new rule, the special act will stand. *The Police Pension Cases, supra.*

The distinction is neatly pointed by comparing two decisions. In *Baltimore* v. *Starr Church, supra,* the court condemned a special act as a merely arbitrary departure from the rule of uniform taxation. Declaration of Rights, § 15. It held at the same time that the act was void under another section of the Constitution (Article III, § 33) because no evil had arisen, no circumstances had developed, to give even colorable grounds of reason for the adoption of a special rule. *The Police Pension Cases, supra,* show the picture from a different angle. There were general laws upon the statute books providing for the grant of pensions to members of the police force, not

including matrons. A matron was dismissed for physical disability after many years of service. The legislature, impressed by the hardship of her position, passed a special act for her relief. The court took the view that here was a special case not provided for or considered in an existing general law, and so upheld what had been done. See also *O'Brian & Co.* v. *County Commissioners; Hodges* v. *Baltimore Union Pass. Ry. Co.*, applying a like rule.

(c) The statute is not repugnant to Article XI A, the home rule article, of the Maryland Constitution.

" SEC. 4. From and after the adoption of a charter under the provisions of this Article by the City of Baltimore or any County of this State, no public local law shall be enacted by the General Assembly for said City or County on any subject covered by express powers granted as above provided. Any law so drawn as to apply to two or more of the geographical sub-divisions of this State shall not be deemed a Local Law, within the Meaning of this Act. The term ' geographical sub-division ' herein used shall be taken to mean the City of Baltimore or any of the Counties of this State."

The act of exemption is so drawn as to apply to two or more geographical subdivisions of the state, i.e., to Baltimore and Annapolis. It is thus within the powers expressly reserved to the General Assembly.

■ There is error in the holding of the Circuit Court of Appeals that the franchise payments due to the two cities under municipal ordinances wherein the payments are characterized as " taxes " are not " charges in the nature of a tax " within the meaning of the statute.

They were plainly so intended.

■ We have assumed, without deciding, that the respondents, though without standing to invoke the protection of the Federal Constitution, will be heard to complain of a violation of the Constitution of the State.

Their standing for that purpose, at least in the state courts, is a question of state practice (*Columbus & Greenville Ry. Co. v. Miller*, 283 U.S. 96, 99; *Braxton County Court v. West Virginia*, 208 U.S. 192, 197, 198; *Stewart v. Kansas City*, 239 U.S. 14, 16), as to which the federal courts do not exercise an independent judgment.

The Maryland decisions proceed on the assumption that municipal corporations assailing a statute of exemption or other special legislation have an interest in the controversy which entitles them to be heard (*Baltimore v. Starr Church, supra; Baltimore v. Alleghany County*, 99 Md. 1; 57 Atl. 632), though the reports do not show that their interest was questioned.

In the absence of any argument to the contrary in behalf of the petitioner, we make the same assumption here.

The judgments are                                    *Reversed.*