Gabrielli, J.
(concurring). I am in full agreement with the Per Curiam opinion and I join in affirming the order of the Appellate Division.
I cannot, however, stand idly by without commenting upon the dissenter’s attempt to justify the permissive use of a prohibited intoxicant when the Legislature, following extensive studies and hearings, has specifically found the drug to be sufficiently harmful to warrant punishing its possession in an effort to deter its use. Cases are not to be decided upon one’s personal views or preferences concerning a legislative decision; and, perforce, a Judge’s personal desires and private opinions may never be permitted to form the basis of a judicial determination. We do a great disservice to the judicial responsibilities with which we have been entrusted when we step away from the role of impartial arbiters of conflicting views and enter the fray of political debate. The Court of Appeals is a court of law, and, as such, our review must be, as always, based upon the record before us in any given case.
The record in this case is reflective of the long-standing division within the scientific community regarding the effects of marihuana use upon the individual. There have been and, no doubt, always will be those who claim that marihuana may be used without serious side effects. There is, however, an abundance of reputable scientific authority to the contrary which simply cannot be ignored (see, e.g., Jones and Jones, Sensual Drugs: Deprivation and Rehabilitation of the Mind). In one survey of the recent scientific data on the subject, a survey which was introduced into the record by the People, it *647 was noted that profound changes in the surface membranes of the brain cells occur in animals when they are exposed to doses of marihuana within the range of normal human use (Jones, On the Problems Executives Must Anticipate with the Growth of Marijuana Smoking, Executive Health, vol XIV, No. 1, Oct., 1977). Similarly, a study published in the Journal of the American Medical Association in June of 1975 drew a direct correlation between the appearance of organic brain disease and the use of cannabis. Also alarming are the mounting statistics on the relationship between marihuana and genetic abnormalities in the offspring of some users of the drug.
My colleague who authored the dissenting opinion asserts flatly that the weight of "world-wide authority” has concluded that marihuana is not addictive, has no withdrawal symptoms and, most significantly, "does not cause hazard to the public safety”. Yet, there is an enormous amount of hard evidence to indicate that the heavy use of marihuana leads to a tolerance of the substance and that symptoms such as weight loss, vomiting, hot flashes and severe irritability can ensue if the drug is withdrawn (Jones, supra; see Marijuana and Health, Fourth Report to the United States Congress from the Secretary of Health, Education and Welfare [1974] 10, 75-81 [hereinafter referred to as Fourth Report]). As to the contention that marihuana use poses no danger to the public safety, one need only examine the evidence of the effect that consumption of the drug has upon the driving abilities of its users to recognize the fallacy of the dissenter’s assertion. This evidence indicates that, with the ingestion of marihuana, the driver’s reaction time is increased and his ability to concentrate on the road is concomitantly diminished (Fourth Report, supra, pp 10-11; see Ravin v State, 537 P2d 494, 510-511, and n 67 [Alaska]). Thus, one who retreats into the privacy of his home to take a few so-called "harmless” puffs from a marihuana cigarette may very well convert his private vice into a matter of public concern when he leaves the confines of his home and takes his vehicle out onto the public highway. And, realistically, we cannot blind ourselves to what history and common experience teach us — that it is not unusual for a user of the drug to encourage and induce others to experiment with the substance.
The point of the foregoing discussion is not necessarily to document beyond question that marihuana is a harmful sub *648 stance, the possession of which must be prohibited lest dire consequences to society ensue. Rather, it is simply to illustrate that the scientific community cannot provide us with any unequivocal assurance that marihuana is, as the dissenter seems to suggest, as innocuous as "apple pie”.
In the face of the prodigious amount of conflicting data on the effects of marihuana, I am hard pressed to comprehend how it can be said that a legislative decision to outlaw possession of the substance is without basis in reason, particularly where, as here, that decision is reached following exhaustive hearings and studies. Certainly our collective background as Judges does not give us the scientific knowledge and skills to choose among the various studies and determine which of them are authoritative. And, even if we had the requisite technical insight, we would be overstepping the bounds of judicial prerogative were we to intervene in what is essentially a legislative matter by determining that the statutory prohibitions on the possession of marihuana do not advance the public good. "It is not the function of á court to determine whether the public policy that finds expression in legislation * * * is well or ill conceived. * * * The judicial function is exhausted with the discovery that the relation between means and end is not wholly vain and fanciful * * *. Within the field, where men of reason may reasonably differ, the legislature must have its way” (Williams v Mayor, 289 US 36, 42 [Cardozo, J.]).*
The advocates of unfettered marihuana use have not been able to convince the Legislature that the substance is without deleterious effect. Certainly, it cannot be seriously argued that the Legislature is without the power under the Constitution to forbid the possession and use of an intoxicant which it deems to be harmful on the basis of the scientific data before it solely because its decision may effect an individual’s desire to do as he pleases.
There may be those who believe that the Legislature should not assume a protective posture toward the State’s citizens and that the individual liberties protected by the Constitution include the right to self-destruction. I cannot share such a *649 belief, however, for I am of the view that the most valuable natural resource we have as a society is our people. When an individual ingests a harmful substance and perhaps causes damage to his own brain cells, his productive capacity, talents and energies are lessened, and society as a whole is thereby diminished. I cannot accept the dangerous doctrine that suggests that our elected legislators have not the power to take steps to prevent such a result.
For all of these reasons, I wholeheartedly join in the position adopted by the majority and cast my vote, without reservation, to affirm the conviction.

 Of course, there are greater constraints upon legislative decision-making when it impinges upon the sphere of individual privacy in a way that implicates a fundamental freedom (see, e.g., Eisenstadt v Baird, 405 US 438; Griswold v Connecticut, 381 US 479; cf. Stanley v Georgia, 394 US 557). No such fundamental freedom is involved, however, in the legislative decision to prohibit the possession and use of marihuana.