**CITY OF MOORE, OKLAHOMA, a Municipal Corporation, Plaintiff-Appellant,**

v.

**ATCHISON, TOPEKA, & SANTA FE RAILWAY COMPANY, a Railroad Corporation, Defendant-Appellee.**

No. 80–2178.

United States Court of Appeals, Tenth Circuit.

Feb. 14, 1983.

Bill Pipkin, Moore, Okl., for plaintiff-appellant.

Hugh D. Rice of Rainey, Ross, Rice & Binns, Oklahoma City, Okl., for defendant-appellee.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The City of Moore, Oklahoma appeals the district court's summary judgment order in favor of the Atchison, Topeka, & Santa Fe Railway Company (Santa Fe). On appeal the issues are (1) whether the amount in controversy is sufficient to invoke federal jurisdiction, (2) whether the district court should have abstained pending resolution of state law issues in a state court proceeding, and (3) whether Okla.Stat. tit. 11, § 43–108, exempting railroads from city zoning power, violates the Oklahoma or United States constitutions.

Santa Fe owns real property within the city limits of Moore, Oklahoma on which it is constructing part of a switching yard and an office and storage building. Although the city had zoned the property "Suburban Agricultural," Santa Fe began construction and applied for rezoning. The City of Moore Planning and Zoning Commission denied Santa Fe's rezoning application, but before the city council ruled on the matter Santa Fe withdrew its application. Santa Fe claims it is exempt from the city's zoning ordinances, relying on Okla.Stat. tit. 11, § 43–108, which is part of an article conferring zoning power on municipalities and which states an exemption from local ordinances: "In no event shall any provision of this article apply to any property of any railway company or terminal company."

The City of Moore brought an action against Santa Fe in an Oklahoma state court, seeking a declaration that the statutory exemption for railroads is unconstitutional. Santa Fe removed the case to federal district court. The city moved to have the case remanded to state court, claiming that the amount in controversy was inadequate. The court denied the motion. Subsequently, the court granted Santa Fe's motion for summary judgment.

I

Santa Fe argues that removal was proper because the parties have diverse citizenship and the amount in controversy exceeds $10,000. See 28 U.S.C. §§ 1332, 1441(a). The city controverts the amount in controversy, arguing that it sought only a declaratory judgment to determine whether Santa Fe is subject to the city's zoning ordinances.

In a declaratory judgment action, the amount in controversy is measured by the value of the object of the litigation. *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 347, 97 S.Ct. 2434, 2443, 53 L.Ed.2d 383 (1977). Dismissal is appropriate only if it appears to a "legal certainty" that the jurisdictional amount is not met. See *id.* at 346–48, 97 S.Ct. at 2443–44. To determine the amount in controversy, we look to the pecuniary effect an adverse declaration will have on either party to the lawsuit. *Oklahoma Retail Grocers Association v. Wal-Mart Stores, Inc.,* 605 F.2d 1155 (10th Cir.1979); *Ronzio v. Denver & Rio Grande Western Railroad Co.,* 116 F.2d 604, 606 (10th Cir.1940).

The City of Moore brought the suit seeking a declaration that its zoning power extends to the property on which Santa Fe seeks to construct the switching yard. Although the city alleges that a judgment in its favor would mean only that Santa Fe must apply for rezoning, there is no indication that such a request would be approved. The city's planning commission already has unanimously denied Santa Fe's rezoning application, and the city gives no indication that the planning commission would reverse its position if a second rezoning application

were made or that the city council would overrule the planning commission. In its motion for summary judgment, Santa Fe appended the affidavit of one of its officers, which stated that if Santa Fe cannot use its switching yard and building it will lose more than $4,800,000 in construction costs already incurred. Since the city did not controvert that contention, the amount in controversy requirement is met. The district court had jurisdiction over the declaratory judgment action.

## II

■ ·Moore also contends that the district court should have abstained or, alternatively, that we should certify the state law questions to the Oklahoma Supreme Court pursuant to Okla.Stat. tit. 20, § 1602. A federal court should abstain when a federal constitutional claim is premised on an unsettled question of state law whose resolution by a state court might avoid or modify the federal constitutional issue.[1] *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). However, abstention is an extraordinary exception to a district court's general duty to decide a controversy properly before it. *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959). Although the Oklahoma Supreme Court has never ruled on the constitutionality of the railroad exemption from municipality zoning laws,[2] the state law questions involved in this suit are settled. Furthermore, the city's federal constitutional claim is unaffected by state law. Thus, abstention would have been inappropriate.

---

1. Because the criteria for certification are similar to those for abstention, *see* Okla.Stat. tit. 20, § 1602, we do not address certification separately.

2. *McCurley v. City of El Reno,* 138 Okl. 92, 280 P. 467 (1929), is the only case in which the Oklahoma Supreme Court has considered the railroad exemption. Without addressing the exemption's constitutionality, the court limited the exemption to a railroad's property "used or useful for the purposes of such company," and

## III

■ The City of Moore contends that the statutory exemption from zoning given to railroads violates its powers as a home rule city to regulate the use of land within its boundaries. The city adopted its home rule charter pursuant to Okla. Const. art. XVIII, § 3(a)–(b). The charter supersedes all Oklahoma statutes with respect to matters of local concern. *E.g., Walton v. Donnelly,* 83 Okl. 233, 201 P. 367, 369 (1921). Although the charter does not specifically empower the City of Moore to restrict land use by means of zoning regulations, it contains general provisions that give the city "all powers ... granted to cities by the state constitution and law, and all the implied powers necessary to carry into execution all the powers granted," "power to ordain and to enforce local legislation," and, disclaiming any requirement to expressly enumerate its powers, "all powers which, under the state constitution and law, it would be competent for this charter specifically to enumerate or mention." R. I, 49–50 (Exh. 1, § 1–3).

Santa Fe responds that the City of Moore's zoning powers flow from Oklahoma's standard zoning enabling act, Okla. Stat. tit. 11, §§ 43–101 to –109, and not from its home rule charter. We agree. The preamble to the city's zoning ordinance cites the zoning enabling act as the source of its authority. The general provisions of the city's home rule charter are inadequate to confer zoning powers on the city. *See In re Reynolds,* 328 P.2d 441, 443–44 (Okl.Cr. App.1958). When, as here, the charter does not specifically provide zoning powers, the Oklahoma Supreme Court has held that a home rule city's power to zone rests on the enabling act. *Development Industries, Inc.*

declared the exemption inapplicable to premises the railroad leases to private parties for nonrailroad purposes. 280 P. at 472. Recently, without addressing the constitutionality question, the Oklahoma Attorney General relied on the statutory exemption for railroads as support for his opinion that a city may not use zoning ordinances to regulate the activities of a railroad on railroad property. Op.Okla.Att'y Gen. No. 79–150 (1979).

*v. City of Norman,* 412 P.2d 953 (Okl.1966). Because the city's power to zone is derived strictly from the zoning enabling act, the City of Moore is subject to the limitations on zoning powers that the act contains.

■ Next, the city maintains that the railroad exemption must yield to its power to control and regulate the use and enjoyment of public ways, as authorized by Okla. Const. art. XVIII, § 7 and Okla.Stat. tit. 11, § 36–101. The state constitution designates railroads as public highways. Okla. Const. art. IX, § 6. Santa Fe responds that the parties' stipulations preclude reliance on the constitutional provision, and in any event that case law interpreting Okla. Const. art. XVIII, § 7 lodges control of streets and highways within a city's corporate limits in the state unless the state has specifically delegated that power to the city. We agree with Santa Fe. The City of Moore stipulated that the property contained no public way: "There are no streets, alleys or public grounds or ways, of the CITY OF MOORE, either dedicated or open for public use, situate on the Subject Premises." Even if the stipulation is not read to preclude this argument, *Martin v. Rowlett,* 185 Okl. 431, 93 P.2d 1090 (1939), requires that we resolve this issue against the city. That case declares, "It is elementary that control over the streets and highways within the corporate limits of a municipality is reserved in the state, and that the municipality can exercise only such control as has been delegated to it by the state." 93 P.2d 1091. The specific statutory limitation on municipality zoning powers regarding railroad property negates any implication that power to control railroad property has been delegated to the city.

Next, the city claims that the railroad exemption grants Santa Fe an exclusive right, privilege, or immunity prohibited by the Oklahoma Constitution, *see* Okla. Const. art. V, § 51, and discriminates in favor of railways and terminal companies in violation of the Equal Protection Clause of the United States Constitution. Santa Fe asserts that the city lacks standing to challenge the statute on the basis of the state privileges and immunities clause or the federal Equal Protection Clause because the city is not the entity those clauses seek to protect, and that even if standing exists, the city's claims are without merit. We first address the standing issue.

■ State law determines who has standing to challenge the constitutionality of a state statute on the ground that it violates a state constitution. *See Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 48, 53 S.Ct. 431, 435, 77 L.Ed. 1015 (1933). Oklahoma courts decline to rule on the constitutionality of Oklahoma statutes "until there is presented a proper case in which it is made to appear that the person complaining has been, or is about to be, denied some right or privilege, *to which he was lawfully entitled.*" *Bradbury v. Oklahoma State Board of Chiropody,* 490 P.2d 246, 248 (Okl.1971) (emphasis in original). Oklahoma's privileges and immunities clause states, "The legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State." Okla. Const. art. V, § 51. The intent of the clause is to preserve equality among citizens who are similarly situated. *Kimery v. Public Service Company,* 622 P.2d 1066, 1071 (Okl.1980). Thus, the clause may be invoked by a person who suffers injury because the legislature has granted an exclusive right, privilege, or immunity to other persons similarly situated. Here the railroad and the City of Moore are not similarly situated. The state's railroad exemption does not give to the railroad something it denies to the city. Thus, the city, in its effort to enforce its zoning powers against railroads, cannot invoke the protections of Oklahoma's privileges and immunities clause.

■ Nor can the city challenge the statutory exemption by invoking the Equal Protection Clause of the United States Constitution. The City of Moore is a political subdivision of Oklahoma, *see City of Tulsa v. Wheetley,* 187 Okl. 155, 101 P.2d 834, 836 (1940), and political subdivisions of a state lack standing to challenge the validity of a

state statute on Fourteenth Amendment grounds. *City of New York v. Richardson,* 473 F.2d 923, 929 (2d Cir.), *cert. denied, Lavine v. Lindsay,* 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973); *see Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933); *City of Newark v. New Jersey,* 262 U.S. 192, 196, 43 S.Ct. 539, 540, 67 L.Ed. 943 (1923); *City of Trenton v. New Jersey,* 262 U.S. 182, 188, 43 S.Ct. 534, 537, 67 L.Ed. 937 (1923).

Since we agree with the district court's determination that the City of Moore cannot prevail on its contention that the exemption for railroads is unconstitutional, we need not reach Santa Fe's alternative defenses.

AFFIRMED.