**CITY OF POUGHKEEPSIE, NEW YORK and Thomas C. Aposporos, Plaintiffs,**

v.

**POUGHKEEPSIE CABLEVISION, INC., Defendant,**

**and**

**The New York State Commission on Cable Television, Defendant-Intervenor.**

No. 82 Civ. 3219 (GLG).

United States District Court, S.D. New York.

Oct. 4, 1983.

tiff's daughter. Plaintiff's papers do not address this incident.

Richard B. Wolf, Poughkeepsie, N.Y., for plaintiffs.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant; John Logan O'Donnell, Gary Hoppe, New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, for defendant-in-tervenor; Melvyn R. Leventhal, Deputy First Asst. Atty. Gen., Stanley A. Camhi, Clement H. Berne, Asst. Attys. Gen., New York City, of counsel.

## OPINION

GOETTEL, District Judge:

In this action for breach of contract, the City of Poughkeepsie, New York (the "City") is suing its cable television franchisee, Poughkeepsie Cablevision, Inc. ("Cablevision"), for damages stemming from its refusal to pay the full amount of the monthly franchise fee that is specified in Cablevision's contract with the City. In its answer, Cablevision has set forth, *inter alia,* the affirmative defense that both New York law and federal law have rendered illegal the contractual provision in question. The City now moves for summary judgment pursuant to Fed.R.Civ.P. 56. Cablevision and New York's State Commission on Cable Television (the "Commission"), which has intervened as a party defendant, cross-move, *inter alia,* for dismissal of the action for lack of subject matter jurisdiction. For the reasons discussed below, the Court concludes that the City's motion must be denied and the defendants' motion must be granted.[1]

FACTS

On December 17, 1965, the City and Cablevision entered into a contract giving Cablevision a franchise to provide cable television services within the City for a period of twenty-five years. In return, Cablevision agreed to pay the City 5% of its gross receipts from its customers within Poughkeepsie. In 1970, the contract was amended to incorporate a series of yearly increases in the franchise fee payments, which were to culminate in January 1974 in a 7% fee. Under the amended contract, this 7% fee was to remain in effect until the end of the term of the franchise on December 17, 1990.

However, in 1972, both the federal and New York State governments promulgated rules regulating the maximum fee a cable television franchisor could charge its fran-

---

1. Because the Court dismisses this suit for lack of subject matter jurisdiction, there is no need to consider any of the defendants' alternate grounds for dismissal.

chisee. First, the Federal Communications Commission (the "F.C.C.") limited franchise fees to a maximum of 3% of a franchisee's yearly gross revenues. 36 F.C.C.2d 143 (1972), codified and hereinafter referred to as 47 C.F.R. § 76.31 (1982). This franchise ceiling was made immediately effective upon franchises granted after March 31, 1972. However, for franchises granted before this date, as was Cablevision's, the ceiling would become effective either at the end of the franchise term or 15 years after the date of the initial grant, whichever occurred first. 47 C.F.R. § 76.31. Thus, the effect of the regulation should have been to reduce Cablevision's fee from 7% to 3% on December 17, 1980, even though the parties' amended contract called for a continuation of the higher fee for another ten years.

At approximately the same time, the State of New York enacted section 818 of article 28 of the Executive Law, which became effective January 1, 1973.[2] That section provides:

> Nothing in this article shall be construed to limit the power of any municipality to impose upon any cable television company, a fee, tax or charge, provided that any such fee, tax or charge when added to the amount payable to the commission pursuant to section eight hundred seventeen does not exceed the maximum amount permitted by applicable federal law, rules or regulations.

N.Y.Exec.Law § 818 (McKinney 1982). The reference therein to "section eight hundred seventeen" is to that provision which authorizes the State Commission on Cable Television to allocate its costs among the state's cable television companies in proportion to their "gross annual receipts" and to charge those companies accordingly. N.Y. Exec.Law § 817 (McKinney 1982). Thus, the effect of section 818 is twofold: first, it limits the cable franchise fees charged by a municipality to the maximum amount al-

lowable under the federal law; second, the statute requires the municipality to reduce the maximum amount by whatever amount is assessed and charged to the franchisee by the Commission. The second restriction was made effective on all franchises, including Cablevision's, as early as January 1, 1973.

Shortly after Cablevision reduced its monthly franchise fee payments in accordance with the federal and state provisions, the City brought this action seeking both damages for breach of contract and a declaratory judgment that the defendant has breached its contract, that the contract and its specific terms are legally valid, and that the New York law on which Cablevision rests its affirmative defense is unconstitutional because it impairs the obligation of contracts in violation of article I, section 10, clause 1 of the U.S. Constitution.[3]

DISCUSSION

The City asserts that this Court has jurisdiction under 28 U.S.C. § 1331 (Supp. V 1981), which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Specifically, in its statement of jurisdiction, the City alleges that a federal question is raised under the "contracts clause" of the Constitution because New York's law adopting the federal limitation on franchise fees impairs its contractual relationship with Cablevision. Cablevision and the Commission respond that the City's complaint is a common law action for breach of contract that is not based on federal law and that this Court, therefore, does not have the jurisdiction to hear the City's complaint.

The elementary requirement that must be met before federal jurisdiction may be invoked is that the federal question in the complaint must be well pleaded. Put

---

2. Article 28 created the State Commission on Cable Television within the State's Executive Department. N.Y.Exec.Law § 814 (McKinney 1982). The duties of the Commission are expressly limited to those "permitted by" and "not contrary to applicable federal law, rules and regulations ...," and generally include the

setting of standards and the overseeing of cable television operations within the state. N.Y. Exec.Law § 815(2) (McKinney 1982).

3. "No State shall ... pass any ... Law impairing the Obligation of Contracts ...." U.S. Const. art. I, § 10, cl. 1.

differently, the complaint must, on its face, state the federal law under which relief is sought.

It is not enough that the plaintiff alleges some anticipated defense to his cause of action and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution.

*Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908).

Those words, written in 1908, could very well have been written about the instant case. In *Mottley,* the railroad had agreed to issue lifetime passes for free travel to the Mottleys in settlement of a tort claim. Following passage of federal legislation prohibiting such free passes, the railroad ceased issuing them and the Mottleys brought suit in federal court alleging that their constitutionally protected contract rights had been violated by the federal law. The Supreme Court held that the district court did not have jurisdiction to hear the Mottleys' suit because "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Id.*

■ The parallel between *Mottley* and the instant case is striking. The City is suing Cablevision for breach of contract and seeks to invoke federal question jurisdiction by contending that Cablevision will raise as an affirmative defense a state law that incorporates a federal regulatory restriction on franchise fees. The City asserts that the state law, but not the federal regulation incorporated therein,[4] is unconstitutional

because the law impairs Cablevision's obligation to pay the full 7% franchise fee. This, under *Mottley,* the City cannot do because its complaint does not state on its face the federal grounds on which its claim for relief rests. The principles laid down in *Mottley* have been reaffirmed on many occasions. *See, e.g., Phillips Petroleum Co. v. Texaco, Inc.,* 415 U.S. 125, 129, 94 S.Ct. 1002, 1004, 39 L.Ed.2d 209 (1974) (per curiam); *Gully v. First Nat'l Bank,* 299 U.S. 109, 113, 57 S.Ct. 96, 98, 81 L.Ed. 70 (1936); *New York v. White,* 528 F.2d 336, 338 (2d Cir.1975).

The City also seeks a declaratory judgment that its contract with Cablevision is legally valid and that the New York law on which Cablevision rests its affirmative defense is unconstitutional. These requests must also be denied because the Court has no jurisdiction to rule on the validity of the contract or the constitutionality of the law.

■ The Declaratory Judgments Act, 28 U.S.C. § 2201 (Supp. V 1981), (the "Act") empowers the federal courts to grant declaratory judgments. The Act provides, in pertinent part, that "[i]n a case of actual controversy *within its jurisdiction* ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration ...." *Id.* (emphasis added). Relying on *Mottley,* the Supreme Court has held that the Act allows relief to be given even where no immediate enforcement is asked, but that this extension of the courts' power was not intended to expand their jurisdiction. Thus, where there is no subject matter jurisdiction, the courts cannot grant declaratory relief. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–879, 94 L.Ed.2d 1194 (1950). Put simply, "an action for declaratory judgment may be brought in federal court ordinarily only if there would exist a basis for federal

---

4. The City's exact words are: "We emphasize that ... we are not requesting this Court to resolve the validity of [47 C.F.R. § 76.31]. The issue to be determined is whether the State, in its effort solely to obtain operating funds for the State Commission, can constitutionally impose [that] federally promulgated cap on the

City's contract." Plaintiff's Reply Memorandum at 6–7. The Court finds this assertion difficult to accept since, even in the absence of the state law, Cablevision could rely on the unchallenged federal regulation as a valid basis for refusing to make the full payments required in its contract with the City.

jurisdiction in a coercive action between the two parties." *Warner-Jenkinson Co. v. Allied Chemical Corp.,* 567 F.2d 184, 186 (2d Cir.1977); *see also Stone & Webster Engineering Corp. v. Ilsley,* 690 F.2d 323, 327 (2d Cir.1982). Since, as noted above, this Court lacks subject matter jurisdiction over the breach of contract claim, it necessarily lacks jurisdiction to issue a declaratory judgment on the same matter.[5]

In sum, the plaintiff has failed to assert a claim arising under the Constitution or federal laws. Consequently, this action must be dismissed for lack of subject matter jurisdiction.

SO ORDERED.

---

**5.** The Court notes that even if this suit were brought in a state court of competent jurisdiction, the City, as a creature of the state, could not challenge the constitutionality of the state law at issue here, *City of Trenton v. New Jersey,* 262 U.S. 182, 186, 43 S.Ct. 534, 536, 67 L.Ed. 937 (1922), and that the state is not bound by Fourteenth Amendment limitations in its dealings with a municipal corporation. *Id.* at 188, 43 S.Ct. at 537. *See also Williams v. Mayor of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 432, 77 L.Ed. 1015 (1933) ("A municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator."); *Appling County v. Municipal Elec. Auth.,* 621 F.2d 1301, 1307–08 (5th Cir. 1980), *cert. denied,* 449 U.S. 1015, 101 S.Ct. 574, 66 L.Ed.2d.474 (1980); *City of Safety Harbor v. Birchfield,* 529 F.2d 1251, 1253 (5th Cir. 1976); *New York v. Richardson,* 473 F.2d 923, 929 (2d Cir.1973), *cert. denied sub nom. Lavine v. Lindsay,* 412 U.S. 950, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973).