Tina **HLAD**, as Next Friend of Kyle Brandon Shipley, a Minor, et al.

v.

**TENNESSEE SECONDARY SCHOOL ATHLETIC ASSOCIATION and Ronnie Carter**

No. 3:03–1043.

United States District Court, M.D. Tennessee, Nashville Division.

Feb. 27, 2004.

**832**

Mark T. Smith, Gallatin, for plaintiff.

Richard L. Colbert, Nashville, for defendant.

### MEMORANDUM

CAMPBELL, District Judge.

#### I. *Introduction*

Pending before the Court are Defendant Ronnie Carter's Motion To Dismiss (Docket No. 29) and Intervening Plaintiff Sumner County Board Of Education On Behalf Of Gallatin High School's Motion To Strike (Docket No. 37).

For the reasons set forth below, the Motion To Dismiss (Docket No. 29) and the Motion to Strike (Docket No. 37) are DENIED.

#### II. *Factual and Procedural Background*

Plaintiff, Tina Hlad, originally brought this action as next friend of her minor son, Kyle Brandon Shipley, against Defendants Tennessee Secondary School Athletic Association ("TSSAA"), and its Executive Director, Ronnie Carter, under 42 U.S.C. § 1983, alleging that the Defendants violated her son's constitutional rights in ruling that he was ineligible to participate in athletics at Gallatin High School. (Complaint (Docket No. 1)). Plaintiff also sought a temporary restraining order seeking to prevent the Defendants from enforcing their eligibility determinations. (Docket No. 2).

After holding a hearing on the Motion, attended by both sides, the Court denied the request for injunctive relief. (Docket Nos. 10, 11). The Sumner County Board of Education, on behalf of Gallatin High School, then filed a Motion To Intervene (Docket No. 14), which was granted by the Court (Docket No. 18), as well as an Application For Temporary Restraining Order (Docket No. 15).

The Court held a hearing on the second injunction motion, and ruled as follows:

> So the first issue that the court needs to determine is whether Gallatin High School has a property interest protected by the Constitution. And the court finds that it does have a property interest in the following things:
>
> First of all, the TSSAA has fined Gallatin High School $500, and Gallatin High School has a property interest in that $500, and that fine was effective upon notice thereof. And also Gallatin High School has a property interest in certain post-season tournament revenues that could be earned through participation in the tournament.
>
> The court's views on this are not new or hidden. On January 13, 2003, in the Brentwood Academy case, the court

there found that Brentwood Academy had a property interest in its $3,000 fine as well as certain post-season tournament revenues, and the court is relying on that analysis in that memorandum for supporting that finding.

The memorandum is at Docket Number 296 in that case, which is case number 3:97–1249, and it is available on the court's website. That case is on appeal.

Now having found that the school has a property interest, the court further finds that property interest is entitled to the protection of procedural due process and the school was entitled to a meaningful hearing. The elements of a meaningful hearing, in the opinion of the court, are notice of the charges and the evidence against it, an opportunity to be heard and respond to those charges and evidence that is known, and an impartial decision-maker.

For purposes of this hearing on a request for a TRO, the plaintiff has carried its burden of the probability of success that the hearing that was held violated the due process clause. The school did not have notice of all the charges and evidence, particularly the school has demonstrated they did not have the DuPont School record form that shows a different address for Ms. Hlad than the Gallatin address. In a word, it shows the address for her son, Vincent, as Hermitage, the Baton Rouge Drive address, as of a date of 8–11–03, whereas the Gallatin transfer form is one day later showing the Browns Lane address in Gallatin, and without knowing all the evidence, the opportunity to be heard was not meaningful. And the plaintiffs have also raised an issue of and carried their burden about an impartial decision-maker. It appears undisputed that Mr. Carter participated in the deliberations of the Board of Control. Exactly who said what to whom is

not clear. There were statements made from the podium that are not in the record and the court is not considering those. It is undisputed that he was present during the executive session. And it is also clear that the McGavock principal was at the public portion of the hearing and participated in some form, exactly who said what to whom is unclear, but the failure to ensure impartial decision-makers for purposes of this hearing, the school's carried its burden in that regard.

The elements of due process are nothing particularly new to either schools or athletic associations. Schools on a regular basis have due process hearings for student discipline. The Metropolitan Government has a policy. Most of the counties that the court is familiar with have set out rules for notice, opportunity to be heard. Some are predeprivation, some are postdeprivation, depending upon whether it is long-term suspension or expulsion, and the school principals are the representatives of the TSSAA and they certainly are familiar with how to hold such a hearing.

Also, a review of the by-laws of various athletic associations in other states indicates that it is commonplace to have appropriate due process procedures where there is notice and opportunity to be heard by impartial decision-makers.

So the court does not believe any of these findings are particularly new or earthshaking, as they relate to due process requirements.

And the court is concerned that the TSSAA has ignored the court's findings in the prior case, in the *Brentwood Academy* case, and has simply not taken to heart its duties under the Fourteenth Amendment to provide procedural due process.

(Transcript of Temporary Injunction Hearing, at 4–7 (Docket No. 21); Order (Docket No. 20)). The Court went on to find, however, that the balance of equities weighed against issuance of a temporary restraining order. *Id.* The Court, in particular, found the public interest would not be advanced by disrupting a statewide tournament, including many schools, approximately twenty-four hours before it was scheduled to begin. *Id.*

Plaintiff Tina Hlad subsequently filed a Motion For Voluntary Dismissal (Docket No. 32), which was granted by the Court (Docket No. 40). The Intervening Complaint brought by Intervening Plaintiff Sumner County Board of Education remains pending, as well as a Counterclaim (Docket No. 25) by Defendants.

Through the pending Motion To Dismiss (Docket No. 29), Defendant Ronnie Carter argues that he should be dismissed from this action on the basis of qualified immunity.

### III. *Analysis*

#### A. *Standards Governing Motions to Dismiss*

In considering a motion to dismiss, the court is to " 'construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.' " *Andrews v. State of Ohio,* 104 F.3d 803, 806 (6th Cir.1997)(quoting *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993)).

#### B. *Qualified Immunity*

■ Under the qualified immunity doctrine, "government officials who perform discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity applies only to individual capacity claims. *Id.*

In another case brought by a member school against Defendant Carter and the TSSAA, *Brentwood Academy v. Tennessee Secondary School Athletic Association,* 2003 WL 23305276 (M.D.Tenn.2003), this Court held that:

> Defendant Carter, as an employee of a private athletic association, is not entitled to qualified immunity from suit by Brentwood Academy charging a violation of 42 U.S.C. § 1983 and the Constitution. Judicial history does not reveal a firmly rooted tradition of immunity applicable to employees of private athletic associations, and the purposes of the qualified immunity doctrine do not warrant immunity for employees of private athletic associations. *Richardson v. McKnight,* 521 U.S. 399, 117 S.Ct. 2100, 138 L.Ed.2d 540 (1997).

*Id.* at *24. The Court also rejected Defendant Carter's argument that *Bartell v. Lohiser,* 215 F.3d 550 (6th Cir.2000) supported the application of immunity, an argument the Defendant repeats in this case:

> The *Lohiser* Court held that a private foster care contractor and private social workers who contracted with the state to provide a recommendation about whether a mother was fit to parent were entitled to qualified immunity. 215 F.3d at 555–57. The court concluded that the Defendants were private persons performing a discrete public service task at the express direction and under close supervision of the state. *Id.,* at 557.

Carter has not made such a showing in this case.

*Id.* at *24, n. 31.

■ In any event, the Court is not persuaded that Defendant Carter is entitled to qualified immunity under the circumstances presented here. The Supreme Court has made clear that in considering the issue of qualified immunity, it is important that courts apply, in the proper sequence, what has become a two-part qualified immunity analysis. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). The first inquiry is whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right..." *Id.* If a violation could be established on a favorable view of the parties' submissions, "the next, sequential step is to ask whether the right was clearly established." *Id. See also Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir.2003); *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir.2002).[1]

In this case, Defendant Carter first argues that he is entitled to qualified immunity with regard to the claims of Plaintiff Tina Hlad. As Plaintiff Hlad has subsequently dismissed her Complaint in this case, the Court need not address this argument.

■ As to the Intervening Plaintiff Sumner County Board of Education, Defendant Carter argues that the Plaintiff had no property interest that was subject to deprivation in this case. Specifically, Defendant Carter argues that the "fine" imposed on Gallatin High School has now been rescinded[2], and therefore, cannot constitute a property interest. As for tournament revenue, Defendant Carter argues that such an interest is too speculative to constitute a property interest. Finally, Defendant Carter argues that Plaintiff was not deprived of a property interest because that property interest is limited by the terms of its membership contract with the TSSAA.

The Court is persuaded that a fine constitutes a property interest. *See, e.g., Contractors Against Unfair Taxation Instituted on New Yorkers v. City of New York*, 1994 WL 455553, at *4 (S.D.N.Y. Aug.19, 1994)(Property interest in money allegedly exacted for payment of fines for traffic violations); *Jones v. Cowley*, 948 F.2d 1294 (10th Cir.1991)("Certainly, there is no doubt that the $15 fine is a deprivation of a property interest."); *Murray v. Dosal*, 150 F.3d 814 (8th Cir.1998)(Inmate has property interest in money received from outside sources); *Brentwood Academy, supra*, at *17.

---

1. Other panels of the Sixth Circuit apply what they call a three-part analysis:

    First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

    *Dean v. Byerley*, 354 F.3d 540, 557 (6th Cir.2004)(citing *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir.2003)). Under either test, Defendant Carter is not entitled to qualified immunity for the reasons stated herein.

2. Although the Defendants argue that they do not really have the power to impose a fine, the Court uses that term because it is the term used by the Defendants in the letter imposing punishment on Gallatin High School. (Exhibit C to Complaint (Docket No. 1)("Gallatin High School is being fined $500 for the playing of an ineligible player in five varsity contests.")).

■ Defendant Carter argues that even if the Court determines that the fine constitutes a property interest, that determination is "moot" because the TSSAA "rescinded" the fine after this lawsuit was filed. Defendant has not cited or discussed the applicable authorities on mootness, and therefore, the Court is not persuaded that Defendants' voluntary return of the fine moots Plaintiff's due process claim. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 120 S.Ct. 693, 708–11, 145 L.Ed.2d 610 (2000)("The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.") [3]

■ Finally, Defendant Carter argues that any property rights asserted by Plaintiff are limited by its contract with the TSSAA. Defendant has not specified, however, the particular terms of the membership contract which he contends act to limit the property interests alleged by the Plaintiff. Under these circumstances, the Court is not persuaded by Defendant's argument on this point.

■ Next, Defendant Carter argues that Sumner County Board of Education, suing on behalf of Gallatin High School, cannot bring suit against the TSSAA or its officials under the Fourteenth Amendment. To support his argument, Defendant Carter relies on a line of cases beginning with *Trenton v. New Jersey,* 262 U.S. 182, 188, 43 S.Ct. 534, 67 L.Ed. 937 (1923), which held that a state generally is immune to claims by a subsidiary political subdivision alleging a violation of a constitutional provision protecting individual liberties. In a subsequent case, *Williams v. Mayor & City Council of Baltimore,* 289 U.S. 36, 40, 53 S.Ct. 431, 77 L.Ed. 1015 (1933), the Court explained that "[a] municipal corporation, created by a state for the better ordering of government, has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of its creator."

The *Trenton* line of authority does not apply to this Motion of Defendant Carter. Although Defendant Carter has been sued in both his individual and official capacities (Intervening Complaint, Docket No. 19, ¶ 1; Complaint, Docket No. 1, ¶ 6), the pending Motion for qualified immunity by definition can apply only to the individual capacity claim. *Trenton* immunity does not apply to Defendant Carter in his individual capacity because he is neither the State of Tennessee nor a political subdivision thereof. *Trenton* immunity is designed to address intragovernmental litigation, and the individual capacity claim against Defendant Carter is not a government versus government action. Defendant Carter has not cited any case to the contrary.[4]

3. Defendant Carter also argues that Plaintiff has no property interest in "hoped for" football tournament revenues. Plaintiff alleges, however, that absent Defendants' challenged actions, Gallatin High School had already won the regional championship, and would have been the host team for the first round of the playoffs, and as such, entitled to certain assured revenue. For purposes of a motion to dismiss, Plaintiff's allegation regarding tournament revenue is sufficient to satisfy the property interest component of its due process claim.

4. Defendant also cites the following cases to support his argument: *Branson School Dist. RE–82 v. Romer,* 161 F.3d 619, 628 (10th Cir.1998); *United States v. State of Alabama,* 791 F.2d 1450, 1454–56 (11th Cir.1986); *South Macomb Disposal Authority v. Township of Washington,* 790 F.2d 500 (6th Cir. 1986); *Town of Ball v. Rapides Parish Police Jury,* 746 F.2d 1049, 1051 n. 1 (5th Cir.1984); *Village of Arlington Heights v. Regional Transportation Authority,* 653 F.2d 1149, 1151–52 (7th Cir.1981); *City of New York v. Richardson,* 473 F.2d 923, 929 (2nd Cir.1973).

■ In any event, the Sumner County Board of Education is not suing its parent state or any political body created by the State of Tennessee. Defendant Carter and the TSSAA, though state actors for § 1983, are not the State of Tennessee and are not considered the state for all purposes. Unlike those cases cited by the Defendant, the TSSAA was not specifically "created by a state for the better ordering of government." *Williams, supra,* at 40, 53 S.Ct. 431. Defendant Carter has not cited any case wherein the mere status of "state actor" under § 1983 automatically confers immunity from suit by a local governmental body under the *Trenton* line of cases.[5] The Court notes that neither Defendant Carter nor the TSSAA is represented by the Attorney General of the State of Tennessee who is charged with the duty of representing the State of Tennessee and its instrumentalities. Tenn. Code Ann. § 8–6–109. The TSSAA is not a body politic of the State of Tennessee that is cloaked with immunity from § 1983 lawsuits brought on behalf of its member public schools.

As Defendant's arguments do not persuade the Court that the Complaint's allegations, taken in the light most favorable to the Plaintiff, fail to state a constitutional violation, the Court concludes that Defendant has failed to satisfy the first requirement for application of qualified immunity.

■ Defendant Carter does not specifically address the "clearly established" prong of the inquiry—that the constitutional right Plaintiff alleges was not clearly established, or that his conduct was objectively reasonable. Such an argument, in any event, fails. As the Court pointed out at the temporary injunction hearing, there is nothing new or cutting-edge about re-

quiring notice of the evidence and an opportunity to respond to it in state athletic association cases. *See, e.g.,* Nebraska School Activities Association ("NSAA") Constitution, Section 1.10.2.10, *available at www.nsaahome.org;* Oklahoma Secondary School Activities Association ("OSSAA") 2002–2003 Rules and Regulations Handbook, Constitution, Article IV, Section 6c, *available at www.ossaa.com.*

Nor is procedural due process new or unfamiliar to the schools and school principals involved in the TSSAA. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Newsome v. Batavia Local School Dist.,* 842 F.2d 920, 927–28 (6th Cir.1988)(Minimum requirements for school expulsions are oral and written notice of the charges; an explanation of the evidence administrators have against the student; an opportunity to present the student's side of the story; and an impartial decision-maker.); *Ashiegbu v. Williams,* 229 F.3d 1150 [Table] (6th Cir. Aug. 18, 2000); "Metropolitan Nashville Public Schools 2002–2003 Handbook for Parents, Teachers & Students," Section 1, Part II (Procedural Due Process Code For Dealing With Alleged Violations), Sections 10 (Notice), 14 (Composition of the Hearing Board), 15 (Conduct of the Hearing), 16 (Disposition of the Case), 17 (Appeals) *available at www.mnps.org. See also* 20 U.S.C. § 1415 (Procedural safeguards in Individuals With Disabilities Education Act ("IDEA") cases.)

Furthermore, Defendant Carter cannot claim that he is unfamiliar with the requirement that procedural due process principles be applied in TSSAA hearings. Approximately nine months before the decisional meeting in this case, this Court

---

**5.** Unlike this case, the cases cited by the Defendant typically involve the application of legislative enactments. This case challenges

the conduct of Defendant Carter and the TSSAA.

held that these same Defendants were required to provide procedural due process to member schools. *Brentwood Academy, supra,* at \*22–24. In that case, the Court specifically discussed the failure to provide evidence considered by the decision-makers.[6] *Id.*

Accordingly, the Court concludes that, even if the qualified immunity doctrine applies to Defendant Carter, he has not established that he is entitled to application of qualified immunity at this stage of the litigation.

### IV. *Conclusion*

For the reasons described above, the Motion To Dismiss (Docket No. 29) is DENIED. As the Motion to Dismiss requests relief only for Defendant Carter, the Motion to Strike (Docket No. 37) is DENIED.

It is so ORDERED.

---

**6.** *See also Groh v. Ramirez,* 2004 WL 330057, 124 S.Ct. 1284 (Feb. 24, 2004)(not entitled to qualified immunity because it would be clear to a reasonable officer that his conduct was unlawful).